GEORGE W. REED *versus* THE INHABITANTS OF BELFAST.

A father cannot by virtue of St. 1821, c. 118, § 17, maintain an action against a town for the loss of services of a minor son in his employ, or for expenses paid for medical attendance, occasioned by an injury sustained by such son in consequence of a defect in a highway for which the town was responsible, over which he was passing.

The right, which a father has to the future earnings of his minor children, does not constitute present property, and is not embraced within the words "other property" in that statute.

EXCEPTIONS from the District Court, CHANDLER J. presiding.

This was a special action of the case, brought to recover the amount of damages sustained by the plaintiff, in consequence of an injury to his minor son, living with and supported by him, through a defect in a public highway.

The plaintiff offered to prove that there was a certain highway in Belfast, which the defendants were bound to keep in repair; that the same for some time previous to July 25th, 1838, had been and then was out of repair; that the defendants had reasonable notice of that fact, but neglected to repair the same; that on the said 25th of July, his minor son, Charles, was moderately riding on horseback over said highway, and without any fault of his, through a defect in a bridge or causeway in said highway, the said Charles was violently thrown to the ground in consequence of said horse stepping

in a hole in said bridge or causeway, and was seriously injured thereby ; that the plaintiff had expended large sums of money to procure medical attendance for him, &c. and had wholly lost his services for a long period of time.

But CHANDLER J. considering the action not maintainable upon those facts, ordered a nonsuit ; to which order exceptions were filed and allowed.

*W. G. Crosby*, for the plaintiff, argued that St. 1821, c. 118, § 17, gave a remedy for any injury to person or property. The true construction of the statute is alone to be ascertained. Property embraces every interest a man has. He has a pecuniary interest or property in his child ; he may sell or hire out his services. If the child is beaten or injured, he may maintain an action for loss of service. So if he labor for another, he may recover for that labor. The child may recover for mere bodily injury, but he cannot for loss of service, nor for moneys expended in procuring medical aid. The loss of those falls upon the father, who loses the service, and is compelled to pay for the expenses incurred in case of the sickness of his son. The statute was passed for the protection of the community, and should receive a liberal construction. If an individual would be liable to the father for the loss of service of the son, so should the town in a similar case.

*W. Kelly*, for the defendants, contended that this case was not embraced within the provisions of the statute relied upon. That statute gives compensation only for direct injury to person or property, but none for consequential damages. The right to control the earnings of a wife or son does not constitute property. The master could not recover for the loss of services of his hired servant occasioned by an injury arising like the one in this case. The question is not what ought to be, but what is the law. The remedy is not to be extended by construction. At common law no action can be maintained. All liabilities being created by statute, and that giving an action only in case of a direct injury to person or property, the present, which is for consequential damages, cannot be maintained. *Mower* v. *Leicester*, 9 Mass. R. 247 ; *Riddle* v. *Proprietors*

*of Locks, &c. on Merrimack River,* 7 Mass. R. 187 ; *Hooper*
v. *Emery,* 14 Maine R. 375.

The opinion of the Court was by

W*HITMAN* C. J. — This action is instituted by the plaintiff,
to recover of the defendants, damages arising from an injury
sustained to the person of his minor son, at the time living
with, and laboring for, and being supported by him.   The in-
jury was sustained in consequence of a defect in a highway in
Belfast, which the inhabitants of that town were bound to keep
in repair.   The Judge presiding in the District Court, at the
trial, being of opinion, that such an action could not be main-
tained, directed a nonsuit, to which the plaintiff excepted, and
has brought the case into this Court in order to a revision of
that opinion.

The action is believed to be unprecedented.   This however
does not form a conclusive objection to its maintenance.   Nev-
ertheless, if cases of similar injuries must have occurred before,
and no action in any one of them was ever commenced to ob-
tain redress, a strong presumption arises, that hitherto such an
action has not been deemed to be maintainable.

Actions of trespass, *per quod servitium amisit,* for the bat-
tery of a servant, we all know, are of familiar occurrence.   So
are, also, special actions on the case for consequential injuries,
arising from the enticing from service, or the debauching a
female servant or daughter.   And it may be, that, if a man
were the keeper of a ferocious animal, a dog for instance, apt
to bite, and known to him to be such, which should essentially
injure a child, living with its parent, that the latter would have
a right of action against the owner.

But it has been considered that towns are liable to the party
injured, in cases of this kind, by force of the statute alone, for
injuries arising from defective ways.   *Mower* v. *Leicester,* 9
Mass. R. 247.   If so, they are liable only to the extent of the
provisions thereof.   The language of the statute is, "that if
any person shall lose a limb, break a bone, or receive any other
injury in his person, or in his horse, team or *other property,*"

Reed *v.* Belfast.

&c. If the action be maintainable under this provision it must be upon the ground, that the plaintiff has sustained an injury to his property. Can the injury to his son be considered as an injury to his property? If the legislature had contemplated extending the remedy to a person, for any injury to his servants, would it not have been natural, that they should so have expressed themselves? Not having done so can we fairly infer, that such injuries were embraced in the words " other property"?

Property, according to the definition in Jacob, "is the highest right a man can have to any thing, being used for that right which one hath to *lands* or *tenements, goods* or *chattels,* which no way depend on another man's courtesy." If slavery existed here, as it does in some of the States of the Union, and the slave here, as there, had no capacity to sue for any injury to himself, and could not, to any legal intent and purpose, be regarded as the owner of property, he might come under the denomination of other " property." But can this be predicated of a son, who can be the owner of property, independently of his parent, and who can, by the aid of his next friend, vindicate his rights thereto; and have redress even against his parent for personal injuries?

The father has undoubtedly, a right to the custody and services of his minor children. But can this be considered as property? Or as such within the scope and meaning of the language used in the statute? Is it goods or chattels? Is it a thing *in præsenti?* or is it something *in futuro* and in expectancy merely? A right solely to derive advantage from a certain source, or by certain means, is not property, Men have ability, by their labor, to acquire property; but this is neither goods nor chattels; and therefore not, in strictness, to be denominated property. It is a right merely. Our rights are numerous, and various in kind. But so long as they remain unexercised they are but rights; they are not property. The fruits which we may expect to reap from the future earnings of our children can, in nowise be considered as present

property, liable to be damaged or injured ; or at any rate not such as could be considered as having been in view by the legislature, when they speak of injuries to the property of any one.   We must suppose that the legislature used the word property in its obvious and ordinary sense, and are not at liberty to seek for a hidden, abstruse or far fetched construction of it. When they speak of injuries to property they do not mean to the person ; and *vice versa.*   If it were otherwise, provision need not have been made for remuneration for the injury to the persons of individuals specifically ; the provision that they should be remunerated for an injury to property would have included both.

. And when the legislature speak of injuries to one man they do not mean injuries to another.   It cannot be believed, that any case like the present was in the actual contemplation of the legislature.   It does nevertheless, sometimes happen, that cases embraced in legislative language, were not actually in view at the time ; and when the legislature does in fact so make use of language they must be taken and deemed to mean what their language imports.   But if it be manifest that they did not, in reality, have any such meaning in view at the time, it would not be reasonable to put a forced construction upon language in order to make them mean so.

*Exceptions overruled and judgment on the nonsuit.*