## Morey *vs.* The Town of Newfane.

No action lies against a town, for an injury to the plaintiff's horses, occasioned by the suffering of a public highway or road to become out of repair and in a ruinous and unsafe condition.

Nor would such an action lie against a town for an injury of that nature, even if the absolute and unconditional obligation of repairing the highways within their limits, was imposed upon towns by the common law or by statute. But it would be liable to presentment merely.

The claim against a town, for damages thus occasioned, being entirely without foundation, will not support a promise by the electors of the town, assembled in town meeting, to pay the same, on the ground of its being made for the purpose of compromising a doubtful claim, and therefore upon a sufficient consideration.

Morey *v.* The Town of Newfane.

DEMURRER to complaint. The nature of the action, and the legal questions raised by the demurrer, appear in the opinion of the court.

SELDEN, J. The complaint in this case alledges, and the demurrer admits, that the plaintiff being the owner of a span of horses, and harness, was on or about the 3d day of May, 1845, driving said horses along a public highway or road within the said town of Newfane. That the road was so much out of repair, and in such a ruinous and unsafe condition, through the negligence of the said town and its officers, that although the plaintiff drove his horses carefully and skilfully, they were thrown off the said road into a stream of water and drowned. That at the annual town meeting held in and for said town, on the second Tuesday of April, 1846, the plaintiff made application to the electors of the town for payment and compensation for his damages, without suit. That the question was then and there submitted to the meeting, under the direction of the presiding officers thereof, and a public vote of the electors present was thereupon taken upon a motion to raise and pay to said plaintiff the sum of one hundred and fifty dollars for his damages so sustained. That the said electors did upon that occasion, by the assent and vote of a majority of their members, determine and promise to raise and pay to said plaintiff the said sum of one hundred and fifty dollars, and that the vote was so announced and declared by the presiding officers of the meeting ; but that the said sum has never been paid.

Upon the argument of the demurrer the defence was rested upon the following grounds. 1st. That the town had no authority to pass such a vote or make any such promise. 2d. That if it had the power there was no sufficient consideration for the promise, because the town was under no absolute obligation to keep the highways within its limits in repair; and if it was, the remedy was by indictment, and no action would lie at the suit of an individual, to recover his private damages. As these two propositions cover the whole ground assumed by the defendants'

counsel, if other questions might have been raised upon the de-murrer it is unnecessary to consider them here.

By the 2d section of the statute concerning towns as bodies corporate, (1 *R. S.* 337,) it is provided that no town shall pos-sess or exercise any corporate powers except such as are enu-merated in that act, or specially given by law, or such as shall be necessary to the exercise of the powers so given. The au-thority of a town, therefore, is to be determined by an exami-nation of the provisions of the statute.

By section 1, sub. 1 of the act referred to, it is provided that towns may sue and be sued in the manner prescribed by law, and by sub. 3 of the same section, that they may *make such contracts* as may be necessary to the exercise of their corporate powers. By subdivisions 4 and 5 of section 6 they have power to institute or defend suits at law or in equity in regard to all controversies whatever, and to raise upon the towns such sum or sums as may be necessary for that purpose.

These provisions, combined, confer very ample powers upon the subjects to which they relate. They do not in express terms, it is true, authorize a town to compromise a suit, or settle and adjust a controversy; but can it be doubted that this power is conferred by necessary implication? Would any one pretend if a claim perfectly legal and just in itself, but which the town board either could not or would not audit and allow, should be presented to a town, that it would not, when acting in its cor-porate capacity at an annual meeting, have power to adjust such claim? Certainly if a suit should be actually commenced, to enforce the claim, the right which the statute gives to defend must embrace the right to confess the cause of action; in other words, to compromise the suit. But must the expenses of a litigation be necessarily incurred in every such case before the town can discharge itself from responsibility? I apprehend the contrary is too clear to be disputed. If, then, a town under our statute has power to liquidate and adjust a legal claim brought against it without suit, it will scarcely be denied that a vote or resolution of the electors, at the annual meeting of the town, would be a proper mode of accomplishing the object, and that a

town, by such a vote, may make a valid contract and impose upon itself a legal obligation which the courts will enforce. This might, I think, be made quite clear by a review of the authorities and principles bearing upon the question, but I can hardly deem it necessary to refer to them in detail. The case of *Nelson* v. *The Town of Milford,* (7 *Pick.* 18,) is a direct authority upon this point. There the vote was to direct the treasurer to pay over to the plaintiffs and others certain sums which they had advanced and paid for the use of the town, and Parker, Ch. J. said that "a vote of this sort by a town is in law a promise express, and if there be a consideration it is a foundation for an action."

The liability of the defendants, therefore, in this case must depend entirely upon the question whether there was a sufficient consideration to support the promise; and this involves inquiries of great importance if not difficulty.

By the law of England the duty of keeping roads in repair devolved upon the parishes. This obligation was absolute and irrespective of any particular resources or means for the purpose. Neither the organization or boundaries of these parishes, nor the obligation thus resting upon them, had their origin in any positive enactment, but both were founded in prescription or immemorial usage. The duty, however, was universal, unless by some counter prescription, or by statute, it was made to rest upon some individual or some other political or corporate body. (*Rex* v. *Sheffield,* 2 *Term R.* 106.) It is insisted by the plaintiff's counsel that this common law duty of parishes in England is in this state transferred to and imposed upon the towns; and it becomes necessary to inquire whether this position can be sustained. In the first place it may be remarked that there is no very close correspondence between the nature and object of the organization of towns in this state and that of parishes in England. While the former are exclusively political in their character, the latter were primarily ecclesiastical, and only incidentally political through the connection in England between the church and the government. But again, towns were known in England and recognized as political bodies as well as, and

Morey *v.* The Town of Newfane.

distinct from, parishes.   There town and vill were synonymous, (*Jac. Law Dict. title Town,*) and a single parish might, and frequently did, embrace a number of towns.   The obligation, however, to repair the roads never rested upon the towns as such, unless by force of some statute, or special usage and prescription.

It is clear, therefore, that towns, in this country, do not succeed to the duty of repairing highways in consequence of any special correspondence between their nature, organization and functions, and those of parishes in England; but if at all it must be because by our statutes certain powers are given to and certain duties imposed upon towns, or rather upon their officers, in regard to roads, and because the making and repairing of roads is to a considerable extent accomplished through our town organizations.   But it is difficult to see how this common law obligation, the sole foundation of which is *prescription* or *immemorial usage,* can be made to attach to bodies of modern statutory creation, unknown to the common law, as they exist here.   The corporate powers of towns in this state are clearly and fully defined by our statutes, and their obligations can only be coextensive with their powers.   The law will not impose a duty where the means of performing it do not exist. What control have towns, as such, over the repair of roads. They choose the commissioners of highways, but there their power ceases.   The statute gives to the commissioners themselves, in express terms, the care and superintendance of the highways and bridges of the town, and confers upon them all the powers requisite to the execution of their trust.   They are in no way responsible to the town, but are themselves a species of quasi corporations, with power to sue and be sued—having legal succession, and deriving all their authority, not through the towns, but directly from the statute.   The towns have no power to give the slightest direction or instruction to these officers, as to the performance of their duties.   Looking, therefore, alone to the provisions of our statutes bearing upon the question, we should be led, I think, unhesitatingly to the conclusion that no such broad and onerous obligation rests upon the towns

in this state as is contended for by the counsel for the plaintiff. But this by no means exhausts the argument against it. The fact that no precedent is known to exist of an attempt even to assert any such doctrine since the organization of our state government, if not conclusive is certainly very strong evidence that it does not exist. Frequent as these accidents upon roads are in all communities, if such a remedy existed as is claimed here it is hardly possible that it should have remained undiscovered until this late period. I think it clear that we have in this state no such absolute and unlimited obligation to keep highways in repair resting any where as is imposed upon parishes in England by immemorial custom. The duty which approaches most nearly to it is that of the commissioners of highways; but that has been repeatedly held to be co-extensive only with the means placed in their hands. Even an indictment will not lie against them for not repairing a bridge, without an express averment that they had funds. (*People* v. *Adsit*, 2 *Hill*, 619.) Nor can they be compelled by mandamus to rebuild a bridge until they are provided with funds. (*People* v. *Commissioners of Highways of Hudson*, 7 *Wend.* 474.) In this last case Judge Nelson, speaking of the obligation of the commissioners to repair, irrespective of funds, says: "But I am satisfied that neither the highway act nor the *common law* imposes this duty upon them or their towns." In *Barker* v. *Loomis*, (6 *Hill*, 463,) it was held that the commissioners could not borrow money for the repair of bridges, and Judge Bronson there says that "they are not bound to build or repair either roads or bridges until the necessary funds or means are provided."

If, then, these officers in whom the ·statute vests the entire control over the matter, whose duty it is expressly made to see that highways are properly repaired, and to whom the necessary means are given, are only conditionally responsible, are the towns absolutely so? It will never, I think, be so held. It is true that towns are liable for all injuries of this description in Massachusetts, Connecticut and other New England states. This, however, is not a common law liability, but is created by statute in all these states. (*Mower* v. *Leicester*, 9 *Mass. Rep.*

247. *Reed* v. *Belfast*, 20 *Maine Rep.* 246. *Chidsey* v. *Canton*, 17 *Conn. Rep.* 475.) In the latter case, Waite, justice, says: "The obligation resting upon towns in relation to the support of highways and bridges is not imposed by the common law, but is wholly the creature of the statute." The same doctrine, substantially, is contained in the other cases cited.

But suppose I am wrong in all this, and the plaintiff's counsel right, in assuming that the law imposes upon towns in this state the same duties which rest upon parishes in England, in respect to the repair of highways; the next question is whether a private action will lie against them for damages, or whether the only remedy is by indictment.

The doctrine is now well settled that a municipal corporation or any other corporate body enjoying franchises and privileges for its own convenience or benefit, is liable in a civil action for any injury resulting either from its misfeasance or that of its officers, or from the neglect of any duty which its charter or the law imposes upon it. A series of decisions, commencing with the *Mayor of Lynn* v. *Turner*, (*Cowp.* 86,) and continuing with some fluctuations down to the present time, in the courts of England as well as of this and other states, have established this principle. But the question here is, whether this rule is equally applicable to those minor political organizations or quasi corporations whose corporate powers and functions are conferred without their solicitation, for the benefit, not of themselves, but of the public at large. It has been considered as settled in England ever since the case of *Russell* v. *The Men of Devon*, (2 *Term R.* 667,) that counties, hundreds, &c. are not liable to actions at the suit of private persons, for such injuries. But a reason exists in that country against such actions, which does not obtain here. Those lesser communities, in England, not being corporations, but mere aggregations of individuals, there could, of course, be no convenient mode of proceeding to enforce a civil remedy against them. This reason is given in the case last cited, and if that was the only reason, that and other similar cases in the English books would weigh little if at all against the maintenance of such suits. There is a still older case in

which a reason somewhat different is given. In *Bro. Abr. title Sur le Case, pl.* 93, it is said that if a highway be out of repair, so that a horse be mired and injured, "no action lies by the owner against *him* who ought to repair it, *for it is a public matter*, and ought to be reformed by presentment." (*See Bartlett* v. *Crozier*, 17 *John. Rep.* 438.)

But we are not without more modern authority on this subject. In *Riddle* v. *The Proprietors of the locks and canals on Merrimac river*, (7 *Mass. Rep.* 169,) Ch. J. Parsons takes the distinction between quasi corporations and corporations created for the benefit of the corporators themselves; holding that the former are only liable to information or indictment for a neglect of duty, while the latter are liable to a civil action also, and cites the cases of *Russell* v. *The Men of Devon*, (2 *Term Rep.* 667,) and *The Mayor of Lynn* v. *Turner*, (*Cowp.* 86,) as illustrative of the distinction.

Again, in the case of *Mower* v. *Leicester*, (9 *Mass. Rep.* 247,) where the same question arose, the court say, "But it is well settled that the common law gives no such action. Corporations created for their own benefit stand on the same ground in this respect as individuals. But quasi corporations created by the legislature for purposes of public policy, are subject by the common law to an indictment for the neglect of duties enjoined on them, but are not liable to an action for such neglect, unless the action be given by some statute." There have been cases in some of our western states in which this distinction has been disregarded or overlooked; but I find no case in this state, nor any recent case in any of the older states, which conflicts with the rule laid down by Chief Justice Parsons. The distinction seems to me just and sound. To subject these quasi corporations whose duties are imposed exclusively for the benefit of the public, for a mere nonfeasance, not only to an indictment, but to a multitude of private suits, would, I think, be a great and unnecessary hardship.

If the common sentiment was not against such a liability, there would have been numerous instances of this kind of prosecutions before this time. The want of precedents weighs

against the maintenance of such an action.   The cases referred to by counsel, in the New England states, have no bearing upon the question; for the reason that the statutes of these states expressly provide that towns shall be liable to actions at the suit of individuals for their private damages.

My conclusion therefore is, that no action would lie against a town for an injury like that complained of in this case, even if the absolute and unconditional obligation of repairing the highways within their limits was imposed upon towns by the common law or by statute; but it would be liable to presentment merely.   There having been, then, no valid claim on the part of the plaintiff against the town, the only remaining question is, whether the promise by the town can be supported on the ground that it was made for the purpose of compromising the plaintiff's claim, and therefore upon a sufficient consideration.

It has been repeatedly said by courts, that the compromise of a "doubtful claim," will support a promise to pay.   It is not very easy to determine what sort of claim is intended by this expression.   It is clear it need not be a valid claim either in law or equity.   May it be entirely without foundation?   Where a suit has been actually commenced, and is pending, it would seem that its settlement will constitute a sufficient consideration, although there should be no probable or plausible ground for the action.   The settlement of an action of slander, where the declaration showed no cause of action whatever, the words laid not being actionable, has been held sufficient to support a promise.   (*Keson* v. *Barclay,* 2 *Penn. Rep.* 531.)   In *Stewart* v. *Ahrenfeldt,* (4 *Denio,* 189,) and *Stoddard* v. *Mix,* (14 *Conn. Rep.* 12,) the general doctrine is laid down that the compromise of a *doubtful* claim will be a good consideration.   In both these cases, however, suits had been commenced.   The discontinuance of a pending suit appears of itself to be sufficient, without regard to the nature of the claim.   But in a case where no proceedings have been instituted, the mere assertion of a claim, having no plausible ground for its support, could hardly prevent a promise to pay from being regarded as a *nudum*

Morey *v.* The Town of Newfane.

*pactum.* But how much or what foundation a claim must have to elevate it from a baseless to a *doubtful* claim, which will support a promise, it is difficult to say. In the case of *Russell* v. *Cook,* (3 *Hill,* 504,) the compromise of a disputed claim, not in suit, was held to sustain a promise. Judge Cowen there says: " No one would think of denying that at least the dispute between the parties was doubtful, and that probably the law was *against* the defendant on the facts disclosed by their evidence. It is enough, however, that it was doubtful." This language seems to imply that the word doubtful, as used in this connection, has some meaning—that the claim must have some probable foundation—must be really *doubtful.* This being so, if the case instead of being doubtful is clear in the judgment of the court, and free from doubt against the claim, it follows that the compromise would not be sustained. In the present case it does not very distinctly appear from the complaint that the plaintiff asserted any *claim* against the town. It is said that he made an application for payment of his damage *without suit.* But for the words without suit, there would be nothing to show that he did not apply for a mere gratuity or favor. This raises at least but an implication of a claim. But suppose this to be sufficient, in the view I have taken of the case there was neither law nor precedent for the claim. It had no foundation; was not *doubtful,* and would not therefore constitute a good consideration for a promise to pay money; especially when that promise was made not by an individual cognizant of his rights, but by the voice of a majority at a town meeting.

Demurrer allowed.