By the Court, C. L. Allen, J.
By the facts detailed in the bill of exceptions it appears that the defendants are a municipal corporation, created by the act of April 26,1831, under the name of “The trustees of the village of Plattsburgh.” *433 That the village was erected into a separate road district, exempt from the superintendence of the commissioners of highways of the town of Plattsburgh, and the trustees of the village were created commissioners of highways, and were clothed with the game powers, and charged with the same duties, over the roads of the Village, as commissioners of highway in towns have or possess. That they were authorized to and did divide the village into separate road districts, and appointed an overseer over each. That the ditch was dug in October, 1349, into which the plaintiff fell, without fault on his part, and received the injury complained of. That one of the trustees knew of the éxistence of the drain, and evidence was given of negligence in not abating the nuisance. The bill also states that the trustees and overseers had abundant means to remove the obstruction. The main question, therefore, arising in this case, is whether the village corporation is liable for the acts of the trustees, or of the overseers, or rather, for the negligent acts of third persons.
The question is an important one, and does not seem to have been fully decided in any of the numerous cases which have been considered as having a bearing upon it. Those cases, however, appear to have established one principle, and that is, that in order to charge a corporation in an action for negligence, in the performance of a public work, the law must have imposed a duty upon it, so as to make that neglect culpable. So it may be said-a village corporation is not liable to an action for the non-repair of streets, unless an absolute duty to repair is due from it by the terms or conditions of its charter, or is presumable from prescription. This duty must be averred in the complaint, and proved upon the trial. Thus the complaint in this case, after a general averment of power and jurisdiction of the trustees over the streets, roads and alleys of the village of Plattsburgh, and particularly over Church alley, alleges that on the 19th of October,' 1849, there was a certain ditch or trench dug in the street called Church alley, &c. “ Yet the said trustees of the said village of Plattsburgh, well knowing the premises and their duty, wrongfully, maliciously, neglectfully, unjustly, and contrary to their duty in that behalf, permitted the *434 said open trench or ditch to be and continue therein and during the night time of that day, without fixing or placing or causing to be placed or fixed, any light or signal or guard, &c. around said trench, <fec.; and in consequence of which said negligence, and improper and malicious conduct of the said trustees,” the disaster happened. There can be no doubt, I think, that this principle is well and abundantly established. (Mayor of Linn v. Turner, Cowper, 86. Henly v. Mayor of Lime, 5 Bing. 91; S. C., 1 Bing. N. C. 222, in error. Mayor of New-York v. Furze, 3 Hill, 612. Mayor of Albany v. Cunliff, 2 Comst. 165.) This point being established—and I did not understand that it was seriously disputed, on the argument—the next question is whether such a duty is imposed upon the inhabitants of the village of Plattsburgh as a municipal corporation, so as to render them liable in this action. The 1st section of . the act designates and bounds the village; the 2d declares it to be a corporation by.the name of the trustees of the village of Plattsburgh; the 3d section prescribes the mode- of electing village officers. The inhabitants, at their annual meeting, are empowered to elect by ballot, five trustees, three assessors, a clerk, treasurer and collector. The said inhabitants, at the same meeting, may vote to raise by tax-$500 in any one year, specifying the purposes for which such tax is intended, and to which it shall be applied; and may determine the compensation to be allowed to any officer of the village. The 5th section enacts that “ the said trustees may make, enact and publish, and repeal and amend by-laws, police regulations and ordinances for clearing off and cleaning the streets, alleys, highways and public squares,” “to prevent, abate or remove nuisances,” and to enforce obedience to all such by-laws, police regulations and ordinances by a penalty not exceeding $15, to be sued for in the corporate name, and when recovered to be paid to the treasurer, for the use of the village.
The 16th section declares that the said village of Plattsburgh shall be a road district and shall be exempt from the superintendence of the commissioners of highways of the town of Plattsburgh, and that the trustees of said village shall be cominis *435 sioners of highways, and shall have the same powers and shall be charged with the same duties, over the roads in said village, as commissioners in towns have or possess.
Tt has been repeatedly decided, both in England and in this country, that corporations possess no powers except those which are specifically granted by their charter. No power can be taken by implication; it must be conferred by statute. The power conferred by the 5th section, can only be enforced in the manner pointed out by the act. They are merely of a legislative character; to make, enact, publish and amend by-laws for clearing off and cleaning the streets, alleys and highways, and to prevent, abate, or remove nuisances. “ It is,” say the court in Boom v. The City of Utica, (2 Barb. S. C. Rep. 104,109,) “ a mere grant of authority to adopt general rules and regulalations respecting the removal of nuisances.” And see Camden and Amboy R. R. and Transportation Co. v. Remer, (4 Barb. 127 ;) Halstead v. Mayor of New-York, (3 Comst. 430;) Hart v. Mayor &c. of Albany, (9 Wend. 571, 588;) Hodges v. City of Buffalo, (2 Denio, 110;) Dunham v. Trustees of Rochester, (5 Cowen, 462.) By these cases it is established that a corporation, when it proceeds to do an act, must show its power, and bring itself within it, by proof. The 16th section of the act declares the village to be a separate road district of the town of Plattsburgh, and transfers the duties of executing the highway laws from the town to the village officers. “ They shall have the same powers, and be charged with the same duties over the roads in the said village, as commissioners of highways in towns have or possess.” They are therefore independent officers, so far as their duties as commissioners of highways are concerned, governed and controlled and directed by the several acts of the legislature regulating highways. They are, to be sure, for certain purposes officers of the corporation, and when acting for the benefit of the corporation, it may be liable for their acts; but not when they are acting as independent officers, whose duties arc specifically prescribed by law. In the case of The Mayor &c. of New- York v. Badley, (2 Denio. 433,) it was held that an action on the case for malfeasance will lie against *436 a corporation ; and that a municipal corporation was responsible for the negligence or unskillfulness of its agents and servants-when employed in the construction of a work for the benefit of the city or town, subject to the government of such corporation. In that case a recovery was had against the corporation of the city of New-York for injuries occasioned to third persons, by the negligent and unskillful construction of a dam on the Croton river ; it appearing that the title to the land upon which the same was erected, was vested in the corporation. The recovery was based upon the express ground that the dam was the property of the corporation, and that such corporation was legally hound to see that its corporate power was not used by any one,so as to become noxious to the occupiers of property on the river below. And the court remarked that although the corporation did not appoint the water commissioners who constructed the dam, and although they had no right to interfere in the appointment or removal of the engineers and others who were employed-in the construction of the work, nor even to withhold the payment of their wages, yet the case was likened to a man who has-work going on upon his own premises and for his own benefit, and who must be civilly answerable for those whom he employs ; that it shall he intended that he has control over those who work upon his premises, and he shall not be allowed to dis-charge himself from that intendment of law, by any act or contract of his own. The court remark u That a municipal corporation, though not liable for acts- requiring the exercise of discretion, when those acts are for the benefit of the public ; or for the acts of independent officers whom it is obliged to appoint,- and whose duties are specifically prescribed by law, yet it is liable for the acts of the agents it voluntarily employs, to do-business for its own private benefit, the same as any other corporation or individual.” (See cases there cited.)
Now under whose control, and under what power, do the trustees act, when in the performance of their duty as commissioners of highways 1 Clearly by the act of incorporation, under the several acts regulating highways. They- are to “ have the same' powers and be charged with the same duties over the roads, -in- *437 the said village," as commissioners of highways in towns have or possess.”
By the act in relation to highways the powers and duties of commissioners are extensive. It is their duty to take upon themselves the care and superintendence of the highways and bridges ; to give directions for repairing , to regulate roads already laid out, to cause highways and bridges which are or may be erected over streams intersecting highways, to be kept in repair ; and to do and perform various other duties required by the act. The trustees, as such commissioners, are an independent set of officers, having certain powers and charged with certain duties altogether without and beyond the control of the village corporation, in relation to the roads therein, and subject to certain fines and penalties for the nonperformance of their duty. Among other things they are required to prosecute any overseer against whoin complaint shall be made, for neglect of his duty, in the manner directed by that act. It has been decided by this court that authority so important, when conferred upon village trustees, is not to be crippled by a narrow construction of the statute. And it was accordingly held, in Graves v. Otis, (2 Hill, 466,) that where the charter of a village declared it to be a road district, and that the trustees should be commissioners of' highways with the same powers, and charged with the same duties, over the roads in the village, as are possessed by commissioners of highways of towns, the defendants might justify the cutting down Of a side walk in front of the plaintiff’s store, in their ‘capacity of commissioners of highways; notwithstanding the defense failed, under an ordinance of the village, and their whole acts under the ordinance were declared void. It was held in that case that the side walks of the village were no less under the superintendence of the trustees, acting as commissioners, than that part of the street used for traveling purposes generally, and that the trustees might work and improve every part of the territory included within the street, being responsible only for wanton or malicious conduct, by which others were injured. Here then they were recognized as independent officers, and their defense sustained wholly on the ground that *438 they were such, and acted under an authority not contained in the village charter. It was not pretended in that case that the village was liable for the acts of the trustees. The action was sought to be maintained against them alone.
I apprehend it cannot be successfully argued that the village of Plattsburgh is liable for the acts or negligence of persons acting in an official capacity, under a separate and independent statute over which they have no control or direction. Suppose in this case the trustees, as commissioners of highways, had directed the ditch in Church alley to be opened for certain purposes ; or if the hole having been occasioned by flood or other accident, they had neglected to fill or cause it to be filled up for two days, during which the accident complained of had happened. Could it be contended that the village was liable for the damages'? I apprehend not; and yet, if the plaintiff’s argument is to prevail such liability would exist. .Such is not the decision, as I understand it, in The Mayor of New- York v. Bailey, and the other cases upon this point.
This view, that as commissioners of highways they are independent, is strengthened by a review of the case of Mitchell v. Halsey, (15 Wend. 241.) That was a case for encroachment on highways within the village of Sag Harbor. The jury who found the encroachment, had been summoned at the instance of the trustees of that village, and one ground taken on certiorari was that the trustees were not authorized by law to institute the proceedings. By an act of the legislature, passed in 1819, certain powers were vested in the freeholders and inhabitants of the “ port of Sag Harbor.” They were authorized to elect trustees. By the 13th section of the act the village was made a separate road district, and the trustees made commissioners of highways, as iy the charter of the village of Plattsburgh. The highway act in force at the time of the passage of the law was the act of 1813. The act of 1830 revised the act of 1813, and repealed it; declaring “ that all acts in force in relation to highways ” (on Long Island) should be repealed. It was argued that this repeal abrogated the act of 1819, conferring the powers of commissioners on the trustees of Sag Harbor. But the *439 court decided otherwise; remarking that the section in force when the act incorporating the village passed, was still in force, and that the act of 1830 was intended simply to abolish the old general system, of which the one then about to become a law was a substitute. This case not only establishes the position that when acting as commissioners these officers are independent, but also shows that any change in the highway laws relating to towns, produces a like change in the powers and duties of the village officers when acting in relation to highways. (And see Otis v. Graves, before cited, and Ontario Bank v. Bunnell, 10 Wend. 186.)
We are thus brought to the position which must be assumed in order to sustain this actionthat a municipal corporation is liable not only for the negligence of certain of its officers when not acting within the scope of their authority as such officers, but also for acts of nonfeasance or malfeasance under a statute entirely independent, conferring entirely separate and independent powers, and creating separate liabilities for neglect of duty. This position cannot be maintained. A village corporation is indeed a body politic, and liable, undoubtedly, to an action when incurring a debt through its corporate officers acting within the line of their duty, but not for a nonfeasance or a misfeasance committed by independent corporate officers. They might be liable, and probably would be, within the case of Mayor of Linn v. Turner, (Cowp. 86,) for injuries arising from omission to repair streets, when the duty was due from and absolutely imposed upon them as a corporation. But I can find no case where they have been held liable for omissions of a duty specifically conferred by statute upon their officers. “ The relation,” (say the court in Martin v. Mayor of Brooklyn, 1 Hill, 545, 551,) “ does not exist between the corporation and officers; certainly not so nearly as that between a postmaster-general and his deputy, and yet the former is held not liable for the nonfeasance of the latter, though he hold by the appointment of the former.” “Iri regard to highways or streets in the village, the trustees are to obey the statute like town commissioners.” (And see Story on Agency, 319, 320, 321, and notes; *440 Clark v. Mayor, &c. of Washington, 12 Wheat. 40.) The duty of repairing the streets does not devolve wholly upon the corporation of the village. It is common with the inhabitants of the town, and has no separate existence. For all highway purposes the village remains a portion of the town, and must pay its share in common with the rest of the town, of all moneys raised for roads, as well for those that lie without as those that are within the corporate limits. An indictment must be against the whole town though part of the road complained of was without or within its limits. (5 Term Rep. 498. 8 Barb. 645.) It would seem to follow from this that if a village corporation can be made liable in an action like the present, then towns, for the same reason, could be made liable in their corporate capacity. Towns can sue and be sued, and the liability for not repairing would be as conclusive upon the one as the other. In the case of towns, however, the question has been fully settled, in the case of Morey v. The Town of Newfane, (8 Barb. 645,) where it was held that no action lies against a town for an injury to a person’s horses occasioned by the suffering of a public highway or road to become out of repair, and in a ruinous and unsafe condition, and that the remedy against the town would be by presentment merely, It was insisted in that case that the common law duty of keeping roads in repair as it devolves upon the parishes in England, was in this state transferred to and imposed upon the towns. But the court remarked that it was difficult to see how this common law obligation, founded on prescription or immemorial usage, could be made to attach to bodies of-modern statutory creation unknown tp the common law, That the corporate powers of towns were clearly and fully defined, and that the law would not impose a duty where the means of performing it did not exist; and the question was asked, with much force, “ what control have towns, as such, over the repair of roads ? They choose the commissioners of highways, but then their power ceases. The statute gives to the commissioners themselves, in express terms, the care and superintendence of the highways and bridges of the town, and confers upon them all the powers requisite to the. execution of their -trust. They *441 are in no way responsible to the town, but are themselves a species of quasi corporation, with power to sue and be sued, having legal succession, and deriving all their authority, not through the towns, but directly from the statute. The towns have no power to give the slightest direction or instruction to these officers, as to the performance of their duties.” The learned judge then proceeds to show that the commissioners themselves are only responsible conditionally, that is, when they are provided with funds ; citing 2 Hill, 619, 7 Wend. 474, and 6 Hill, 463, and saying that towns cannot be held absolutely liable. In Bartlett v. Crozier, (17 John. 439) Ch. J. Kent doubted whether an action would lie at all against commissioners, and rather came to the conclusion that the only remedy was by indictment.
In other states, as in Massachusetts, Vermont and New Hampshire, the action has been maintained because it was expressly given by statute. (9 Mass. Rep. 247. 20 Maine Rep. 246. 17 Conn. Rep. 175. 1 Vermont Rep. 353. 2 N. Hamp. Rep. 105.)
It is argued by the counsel for the respondent in this cause, that if the trustees are to be considered as independent officers the whole doctrine of- respondeat superior is annihilated, in its application to municipalities. On what principle is that axiom bottomed 1 As I understand it, it is this: that he who expects to derive advantage from an act which is done by another for him, must answer for any injury which a third person may sustain from it. (2 Bing. 359.) It will-not do to apply this maxim to the case of all public officers and agents. They are not to be held -responsible for the nonfeasances or negligence of their subordinates or agents, as in the case of the postmaster general before alluded to. It is against public policy to make public officers liable for the acts of those whom they are obliged to employ; especially where they have no control over these acts, and do not derive exclusive benefit from them. If the doctrine were applied-to such agencies it-would operate as a serious discouragement to persons who perform public functions, many of which are rendered gratuitously, and all of which are *442 highly important to the public. (Story on Agency, 319, 320, 321.) The same doctrine is applicable in the case of municipal Corporations. They are liable for the acts of their agents voluntarily employed to do business for their own private benefit, the" same as any other corporation or individual. In Bailey v. Mayor, &c. of New- York, (3 Hill 531; 2 Denio, 633,) it was held that a municipal corporation in its private character as the owner of lands and houses, is to be regarded in the same light as an individual, and dealt with accordingly. In that case the city was held liable; the court however conceding the point that if the powers exercised had been Conferred for public purposes, and not for the private benefit ánd emolument of the corporation, it would not have been liable.
It is further contended that the mayor and common council of the city are elected in the same manner as,these trustees, with duties as specifically prescribed; and that the city has been held liable under similar circumstances, and’ that no distinction exists between the two cases. The case of The Mayor of Albany v. Cunliff, (2 Comst. 165,) does not sustain the counsel in this position. The principle there decided confirms the views already taken, that to charge a corporation for negligence in the performance of a public work, the law must have imposed a duty or conferred an authority, to do the work. And in that case the judgment obtained against the corporation was reversed, because there -was no duty or obligation to repair, and because the corporation had no right to make the repairs. So the ease of The Rochester White Lead Co. v. The City of Rochester goes no further than has already been conceded, that if a municipal corporation, acting within the scope of its powers, directs the construction of a work, it must see that it is done in’ a safe and skillful manner; and even then it is there doubted whether an action could be maintained, unattended by any circumstances of neglect or malice. We are not now considering the point, how far the trustees Would be liable as commissioners of highways, in this action. In Bartlett v. Crozier it- was doubted whether they would be liable under any circumstances. It has not been expressly adjudicated, but the* *443 current of authority rather seems to favor the idea, that when . they have means in their hands, arising from penalties and forfeitures or otherwise, they will he liable for the consequences arising from a neglect to repair. The court, here, found that they had the means in their hands, and ought to have removed the obstruction. They had the means, or the power to have them, by assessing and raising a sufficient amount. (4 Hill, 630.) But if they are liable at all it is as commissioners of highways, or as individuals. The case of Huston v. Mayor of New- York, in manuscript, cited by the counsel for the plaintiff, Aras put upon the ground that the fee in the streets of that city, when laid out by commissioners of streets and roads, is vested in the corporation, and the regulation of them- is subject to their entire control. Not so with the roads and highways on the island. The corporation, as to them, was conceded to have been commissioners of highways, and that as to them they acted as such commissioners, and the city would not be liable for neglect of duty by the commissioners as such. And the case of The Mayor of Albany v. Cunlifj, is cited with approbation by the learned judge who delivered the opinion of a majority of the court in that case, and he remarks that the court has decided, in the case of Griffin v. The Mayor, &c. of New-York, that the defendants were not liable to a private individual for injuries sustained in consequence of rubbish being thrown out in the street by third persons; it not appearing that the corporation, or any of its officers, were notified of the fact and required to have the rubbish removed. So too in the case of Holcomb v. Mayor of Troy, Justice Harris placed his decision, at least in part, upon the ground that the street having been opened, the fee thereof became vested in the corporation, and that the city authorities had exclusive jurisdiction over the streets.
On the whole, I am led to the conclusion that municipal corporations have been held and are liable to a private action only in cases where the duty to perform was absolute, and due from •the corporation; where ample means are placed at their disposal ; or where they have undertaken the performance of a particular work and have been held responsible for its complete and. *444 perfect execution; or where they were acting for the purposes of private advantage or emolument, and were regarded as a private company. That neither of these positions apply to the village of Plattsburgh. The duty of the trustees, as commissioners, was imposed upon them, for the benefit of the public at large, and not for the exclusive benefit of the village ; and the corporation is not liable for an omission to perform such duty oil their part as independent officers, acting under and subject to a law over which the corporation has no control.
[Schenectady General Term,
January 3, 1853.
Willard, Hand, Cady aud C. L. Allen, Justices.]
I think therefore that the judgment of the circuit court should be affirmed.
Judgment affirmed.