PALMER *vs.* NORTH, adm'r, &c.

An agreement, made by the principal beneficiary under a will, with the heirs of the testator who threaten to oppose the probate of the will, that in case they will sign an admission of service of the citation and will not contest the proof of the will, he will pay each of them the sum of $200, is upon a good consideration, and is valid and binding.

And if the proposition is accepted by the heirs, and its terms complied with, on their part, an action can be maintained by them, upon the promise.

Such an agreement can be sustained on the ground of its being for the compromise of a doubtful claim, or a family difficulty, by the surrender of a substantial right given by law.

In an action upon such an agreement, interest is to be allowed from the date of the establishment of the will, before the surrogate, as a valid instrument; hat being the time when the duty to pay becomes fixed and absolute.

APPEAL from a judgment entered upon the report of a referee. The plaintiff, being the assignee of certain claims against the estate of Edwin Stafford, deceased, held by Mary Ann Palmer, the wife of the plaintiff, Atlanta D. Rowell, the wife of N. P. Rowell, and Sarah Flack, the wife of Robert Flack, which claims were disputed by the administrator, entered into an agreement in writing with the defendant as administrator of said Edwin Stafford, under the provisions of the revised statutes, (3 *R. S. 5th ed.* 175, § 41,) that the

Palmer *v.* North.

matters in controversy be referred, pursuant to said statutes, to A. B. Waldo, as referee, to hear and determine upon the same. An order was accordingly entered in the office of the clerk of this court, in Essex county, referring the said matters in controversy to the said A. B. Waldo, and the trial took place before him, on the 26th of August, 1859. The referee subsequently made his report, by which he found the following facts, to wit: That Stephen Stafford died October 28, 1853, at Essex, Essex county, New York, leaving him surviving a widow, Mary Stafford, two sons, Cyrus M. and Edwin Stafford, and four daughters, Lydia Stafford, Sarah Flack, wife of Robert Flack, Mary Ann Palmer, wife of the plaintiff, and Atlanta D. Rowell, wife of Norman P. Rowell, and also some grandchildren, children of a deceased daughter, who was the wife of Timothy Shelden. That said Stephen left a last will and testament, a copy of which was annexed to the report. That Edwin Stafford died on the 1st day of June, 1857, at Essex aforesaid, intestate, and that the defendant, Daniel North, is his sole administrator. That the will of Stephen Stafford, decased, was admitted to probate by the surrogate of the county of Essex, on the 5th day of June, 1854. That the estate of Stephen Stafford at the time of his decease was of the value of $4500, exclusive of the house and lot devised in said will to his son Cyrus. That the home farm in said will mentioned was worth $3000. That the Ring farm, so called, was worth $1000. That the widow, Mary Stafford, and the daughters, Mrs. Flack, Mrs. Palmer and Mrs. Rowell, complained that the will was inequitable, and avowed their determination to oppose its probate. That they each claimed the will was not just to the three daughters, Mrs. Flack, Mrs. Palmer and Mrs. Rowell, but that no objection was made by either of them, except that the bequests to Mrs. Palmer, Mrs. Flack and Mrs. Rowell were too small. That thereupon Edwin Stafford, the defendant's intestate, promised the widow, Mrs. Stafford, and the three daughters, Mrs. Flack, Mrs. Palmer and Mrs. Row-

ell, that if they would not oppose the probate of the will, and would give an admission of service of the citation issued by the surrogate, he, the said Edwin, would pay Mrs. Flack, Mrs. Palmer and Mrs. Rowell two hundred dollars each. That they each accepted the said offer, and agreed, in consideration thereof, to sign an admission of service of the citation and not to contest the proof of said will. That afterwards the will of the said Stephen was proved by the defendant's intestate before the surrogate of the county of Essex, on the petition of the said Mary Stafford, the widow. That the record of the probate thereof shows that neither Mrs. Stafford the widow, nor Mrs. Flack, Mrs. Palmer or Mrs. Rowell opposed its probate. Also that Mrs. Flack, Mrs. Palmer and Mrs. Rowell each signed an admission of the service of a citation issued by the surrogate of the county of Essex, on the petition for proof of the will, and also that the signatures to the admission of the service were proved by the affidavit of said Edwin Stafford. The referee further found, that Mrs. Flack, Mrs. Palmer and Mrs. Rowell were each at the time of making said proposition by said Edwin Stafford, and of the acceptance thereof by them respectively, married women. That the plaintiff is the assignee and owner of the several claims of Mrs. Flack, Mrs. Palmer and Mrs. Rowell, the same having been transferred to him before the commencement of this action.

From the foregoing facts, the referee deduced the following conclusions of law : 1st. That the said promise of the defendant's intestate, Edwin Stafford, was made upon sufficient consideration, and was binding. 2d. That the plaintiff, as the assignee of Mrs. Flack, Mrs. Palmer and Mrs. Rowell, respectively, was entitled to recover the said sum of $200, promised to each of them, together with interest from June 5th, 1854, the time of the proving of the will, to the date of the report. 3d. That the amount of principal so due the plaintiff was $600, and the amount of interest $252, making

Palmer *v.* North.

in all the sum of $852 due the plaintiff, for which he was entitled to a judgment against the defendant as administrator.

From the judgment entered upon this report, the defendant appealed.

*H. H. Ross*, for the appellant. The alleged agreement is void for want of mutuality. (1.) There was no distinct agreement made by either of the daughters of Stephen Stafford and sisters of Edwin Stafford, not to oppose the probate of the will. The promise, if any, was to sign an acknowledgment of the service of the citation. The referee therefore erred in deciding that the promise was made in consideration of their agreement not to oppose the probate. (2.) The real plaintiffs were all married women, and not bound by any agreement they may have made. If they had appeared and contested the probate of the will, it would not have afforded any cause of action against them or their husbands. (*Chit. on Contr.* 16, *n. m, and cases there cited, and p.* 47. 1 *T. R.* 653.) The promissory note of a feme covert is absolutely void. (15 *Barb.* 28, *and authorities cited.* 21 *id.* 546, 7.) The promise must be concurrent and obligatory on both parties. (12 *John.* 190. *Id.* 397. 1 *Barb. Ch.* 499. *Chit. on Contr.* 47. *Utica and Sch. R. R.* v. *Brinckerhoff*, 21 *Wend.* 139. 3 *Seld.* 349.) (3.) The alleged agreement was made with Mrs. Stafford, the executrix and residuary legatee.

II. The referee erred in deciding that the record of probate was proof that neither of the plaintiffs nor the executrix appeared, or opposed the probate of the will. ·

III. The alleged agreement was against public policy, and void on that account. If the will was objectionable, the objection applied equally to the infant heirs of Betsey Shelden, and the compromise contended for was a fraud on them. A note executed by a debtor to a creditor, to induce him to withdraw opposition to the debtor's discharge, is void for fraud on the other creditors. (*See also cases cited in* 12 *John.* 306 ; 2 *T. R.* 763.)

IV. The alleged agreement is void for want of consideration. (1.) A *valid and sufficient* consideration is the very *essence* of a contract not under seal. (*Chit. on Contr.* 26, *and note.*) (2.) In relation to simple contracts, a *valuable* consideration is required. (3.) The main rule in regard to the sufficiency of the consideration seems to be, that it may arise either, 1st. By reason of a benefit resulting to the party promising; or 2d. On occasion of the latter (promisee) sustaining any loss or inconvenience, or subjecting himself to any charge or obligation at the instance of the person making the promise, although such person obtain no advantage therefrom. (4.) The will of Stephen Stafford is formal and legal on its face, and the plaintiff or any one else did not allege or pretend any fraud or legal objection to the probate of the will, nor to its legal effect or validity. (5.) No legal or equitable objection to the will can be *presumed* to have existed, or to have been suggested; because the executrix and the real plaintiffs (daughters) distinctly *avowed* their objections to its provisions, to wit, what they considered an *unequal distribution* of the estate, which will not be pretended to be a ground of objection to the validity of a will. (6.) The only color or pretense of consideration to be found in the testimony, is an agreement by the plaintiffs (sisters) to sign an acknowledgment of service of the citation, which was not of the least benefit to Edwin Stafford, nor even to the executrix, Mary Stafford, the residuary legatee. There was no saving of expense to any person. An affidavit to prove their signatures to the acknowledgment of service of the citation was as necessary as the ordinary affidavit of *service* of the citation, and the trouble and expense would have been the same; and if the *signing of their names* to the acknowledgment of service is an injury, it was incurred on the request and for the executrix only. There must be *some* consideration for the promise. It is not enough that the promise was made to appease the querulousness of the women. (*Geer* v. *Archer,* 2 *Barb. S. C. Rep.* 420, 424.)

Palmer *v.* North.

The inadequacy of the consideration is so *gross* as to amount to evidence of fraud. (*Seymour* v. *Delancy*, 3 *Cowen's R.* 445. 2 *id.* 140.) A voluntary restoration of what the law will compel a man to restore, is not a sufficient consideration for a promise. (5 *Cowen*, 161. 6 *Barb.* 547.) There must be a real consideration to support a promise. (7 *Barb.* 598.) The benefit to one party, or injury to the other, must be a benefit to which the party is not entitled, or the injury must be to the legal rights and not the wrongful claims of the promisee. In *Seaman* v. *Seaman*, (12 *Wend.* 381,) the plaintiff filed a caveat on the ground of insanity of the testator, and the promise was made in consideration that the plaintiff would withdraw the caveat. The court decided that case on the ground that it was a *compromise*, and prima facie an acknowledgment by the defendants that there was color for the objections. The case cited there (3 *Burr.* 1665, &c.) was decided as a commercial transaction, in which consideration was not required. Forbearance, where there was originally no cause of action, is no consideration to raise an assumpsit. (2 *Saund.* 211, *and note. Loyd* v. *Lee*, 1 *Str.* 94. 2 *Com. on Contr.* 13. 1 *Chit. on Contr.* 36, 45.) However ultra some decisions may appear, there are none decided upon facts and pleadings in the particular cases, and supported by authority, that conflict with the well settled doctrine, that to sustain a contract there must be some *substantial* consideration. The conversation between Stephen Stafford and Edwin Stafford, sworn to by Lydia Stafford, is not evidence of any agreement, and does not furnish any consideration for the alleged promise. (1.) It related to advances contemplated by the testator in his lifetime. (2.) If any arrangement was made between the testator and Edwin at that time, it was merged in the will. The evidence of James Stafford, of what took place at the time he drew the will, shows conclusively that the testator did not intend to make any further provision for the plaintiffs, only to advance to each of them a hundred dollars in his lifetime. His attention was then directed

to that subject. (3.) The testimony of Lydia Stafford, about a conversation with Edwin, is too vague and uncertain to be taken as evidence of an agreement. (4.) No pretense of any such agreement was urged by any of the parties as a consideration for the alleged promise. (5.) This claim of a promise was never heard of till more than three years after Edwin Stafford's death. The report of the referee shows that he did not consider any valid agreement proved in this particular. (6.) If established, such an agreement would be invalid.

VI. If there is any cause of action, the suit was prematurely brought. No time was limited for the payment, if any agreement was made by Edwin Stafford. He said he would pay as soon as he could get round to it; would pay it as soon as he could. The plaintiffs ought to have made a demand on the administrator, containing a specification of the claim, which was not done.

VII. Edwin Stafford acted under a misapprehension of his rights. He was induced to believe that the control of the will was in the power of Mary Stafford the executrix, and that her consent and the admission of service of the citation was necessary.

VIII. The referee erred in allowing interest from the 5th June, 1854. If any interest was allowable, it should have been from the time of the demand made by the plaintiffs.

*A. C. Hand*, for the plaintiff. I. The promise is fully and unequivocally proved; and if the consideration was sufficient, was obligatory upon the defendant's intestate. (1.) The witnesses distinctly swear to the promise, and there is no evidence whatever to contradict them, and besides, the referee has passed upon the facts. (2.) It is no objection that the promises were made to married women. If the supposed will of their father had been invalid, their husbands would have had no interest whatever in the property. (*Acts of* 1848, *p.* 307; 1849, *p.* 528. *Billings* v. *Baker*, 28 *Barb.* 343.) A feme covert may contract as to her separate personal es-

Palmer *v.* North.

tate, and dispose of it. (*Same acts,*  *Strong* v. *Skinner,* 4 *Barb.* 546.  *Jaques* v. *Methodist Ep. Church,* 17 *John.* 548. *North Am. Coal Co.* v. *Dyett,* 7 *Paige,* 9.  *Clancy on Rights of Married Women,* 282, 314.  *Van Ellen* v. *Carrier,* 29 *Barb.* 644.)  A promise to a married woman is good, and especially when she is the meritorious cause of action.  (*Co. Litt.* 3 *a.*  *Com. Dig., Baron and Feme, P.* 2.  *Bing. Cov.* 251.  *Howell* v. *Maine,* 3 *Leo.* 403.  *Philliskirk* v. *Pluck-well,* 3 *Maule & Sel.* 393, *and cases there cited.  Clancy on Rights of Mar. Women,* 3 *to* 6.)  She could, at common law even, purchase lands without consent of her husband, and the conveyance was good until avoided by him.  (*Co. Litt.* 3 *a. Com. Dig., Bar. and Feme, P.* 2.)  Under the acts of 1848 and 1849, these promises may be deemed personal property. " Personal property " includes choses in action.  (*Wood's Ins.* 314.  4 *Kent,* 340.  1 *Chit. Gen. Pr.* 99.  *Jac. & Tomlin's Dic., Property.*)

II. The consideration was sufficient.  It was that the promisees would not oppose the probate of the will, and would sign an admission of service of the citation.  The sisters complied with both stipulations.  (1.)  Withdrawing opposition to the probate was sufficient.  It was a compromise of what was honestly in dispute between the parties—a settlement of their conflicting claims—which is sufficient. (*Seaman* v. *Seaman,* 12 *Wend.* 381.  *Ex parte Lucy,* 4 *De G., M. & G.* 356.  *S. C.,* 21 *Eng. Law and Eq.* 199.  *Raymond* v. *Lent,* 14 *John.* 401.  *Chit. on Cont.* 29, 30, 44. *Add. on Cont.* 20, 21.  *Par. Mer. L.* 27.  *Haigh* v. *Brooks,* 10 *A. & E.* 309, 320.  *Longbridge* v. *Dorville,* 5 *B. & Ald.* 117.  *L'Amoreux* v. *Gould,* 3 *Sel.* 349.  *Fay's Adm'r* v. *Richards,* 21 *Wend.* 627.  *Johnson* v. *Titus,* 2 *Hill,* 606. *Horner* v. *Wood,* 15 *Barb.* 371.)  The court will not inquire which party could have succeeded if the proof of the will had been opposed.  (*Seaman* v. *Seaman, supra.*)  If Edwin had induced his father to make a will in his favor, on a promise to pay a sum to each of his sisters, a refusal to

fulfill that contract was a fraud. And an action at law or suit in equity will lie in such case in favor of the child defrauded. (1 *Story's Eq.* §§ 252, 256, 382. 2 *id.* §§ 768, 1265. *Dutton* v. *Poole,* 2 *Lev.* 210. *S. C.,* 1 *Ventr.* 318, 332. *Add. on Cont.* 942. *Barrow* v. *Greenough,* 3 *Vesey,* 152, 155. *Mestaer* v. *Gillespie,* 11 *id.* 621.) And it is by no means certain but the will could have been opposed before the surrogate on that ground. Chancery has refused to interfere, because ecclesiastical and law courts have jurisdiction. (*See Allen* v. *Macpherson,* 1 *Phil. R.* 133, 146 *n., Am. ed ; Brady* v. *McCosker,* 1 *Comst.* 214; *Clarke* v. *Sawyer,* 2 *id.* 498; *Colton* v. *Ross,* 2 *Paige,* 396; 1 *Story,* §§ 440, 184, 238; 2 *id.* 1445.) It was the settlement of a family difficulty, and such contracts are favored and will be sustained when other compromises might not be. (*Ibid. Stapilton* v. *Stapilton,* 1 *Atk.* 2, 5, 6, 10. *Cory* v. *Cory,* 1 *Ves. sen.* 19. 1 *Story's Eq.* §§ 113 *n.,* 129, 132. *Cann* v. *Cann,* 1 *P. Wms.* 722. *Watkins* v. *Watkins,* 24 *Geo. R.* 402.) (2.) Signing the admission was sufficient consideration. If there be no fraud, or mistake, or illegality, or warranty, the law does not regard the amount or inadequacy of the consideration ; and, however slight, the agreement will be binding. (*Oakley* v. *Boorman,* 21 *Wend.* 588. *Wilkinson* v. *Oliveira,* 1 *Bing. N. C.* 490. *Johnson* v. *Titus,* 2 *Hill,* 606. 1 *Saund. Rep.* 211 *b. Add. on Cont.* 18. *Pars. Mer. L.* 26 *and note* 2. *Pillous* v. *Mierop,* 3 *Burr.* 1673. *Chit. on Cont.* 29–33. *Sturlyn* v. *Albany, Cro. Eliz.* 67.)

III. None of the interlocutory objections and exceptions on the part of defendant are well taken. We do not see how they can be seriously urged.

The proof of the value of the estate of Stephen Stafford — as to whether he had agreed with Edwin to make his will — and the admissions of Edwin that he was to pay a certain sum to his sisters, were relevant and competent. The object was not to show the will was not properly executed or was revoked, but to show that Edwin was under at least a moral obliga-

tion; and the plaintiff had a right to the evidence to show, if he could, a fraudulent interposition to prevent a disposition in favor of his sisters. (*See 2d point.*)

IV. The allowance of interest was correct. (*Van Rensselaer* v. *Jewett,* 2 *Comst.* 135. *Livingston* v. *Miller,* 1 *Kern.* 80. *Purdy* v. *Phillips, Id.* 406.) Besides, the exception was not sufficient. (*McMahon* v. *N. Y. and E. R. R. Co.,* 20 *N. Y. Rep.* 463.) Nor will a judgment be reversed *in toto* for allowance of too much interest.

*By the Court,* BOCKES, J.   Edwin Stafford was made a beneficiary under his father's will, to a large amount, compared with the amount of property left by the testator. His sisters, Sarah, Mary and Atlanta, were, by the will, each given five dollars. On the decease of the testator, these legatees prepared and threatened to oppose the probate of the will; whereupon Edwin promised and agreed with them, that in case they would sign an admission of service of the citation and not contest the proof of the will, he would pay them each the sum of $200. They signed the citation and forebore all opposition to the will. Edwin having died, this action is brought against his administrator by the plaintiff, as assignee of those claims.

The principal questions discussed on this appeal are, *first,* whether the agreement counted on is established by proof, and *secondly,* whether, if proved, it is a valid and binding agreement in law.

The referee has found and certifies the fact that Edwin promised his three sisters that if they would not oppose the probate of the will, and would give an admission of the service of the citation, he would pay them two hundred dollars each; that they each accepted the offer, and agreed in consideration thereof to sign an admission of service of the citation and not to contest the proof of the will—and that they observed and fulfilled the agreement on their part. This is

a question of fact on which the finding of the referee is conclusive, if there is any sufficient evidence in the case to give it support.

Without referring to all the evidence bearing on this point, it is enough to allude to the testimony of Mary Stafford, the widow of Stephen and executrix of the will. She says that on her objecting that the will was unfair to the girls, and that it ought to be broken up if it could be, he said he would give them $200 apiece, if they would go on and sign the citation and make no trouble about it; that he did not want the will broken up; that he wanted her to talk with them, and she did talk with them and informed them of his offer; that they said they would take up with $200, to save trouble, though they thought it was not enough. Thereupon they signed the admission of service of the citation, and the will was proved without opposition. There was also evidence going to show that there was some understanding between the testator and Edwin, at or about the time of the making of the will, by which Edwin was to pay the girls something.

If the evidence above briefly stated is credible, it fully sustains the finding of the referee. Edwin made the girls a clear and distinct proposition, which they as distinctly accepted. It thus became an agreement between them, good in form, and it appears that the sisters faithfully in all things performed it on their part. Not only is there some evidence of the agreement as found by the referee, but his conclusion in that regard is well sustained; indeed, a different conclusion would, in my judgment, have been directly against the evidence.

Secondly. Was the agreement valid and binding on the defendant's intestate? It is urged that the agreement was without consideration and void. The consideration was that the sisters should sign admission of service of the citation, and forego all opposition to the probate of the will. They had a right, being heirs at law and next of kin of testator, to appear before the surrogate and oppose the probate. They

Palmer *v.* North.

and their mother, the executrix, deemed the will unjust to them, and an effort to prevent its establishment as a last will and testament was in contemplation, to be urged and maintained by the sisters, if possible. It was not yet established as a valid instrument—and its rejection would be greatly to Edwin's detriment—and there was at least a possibility that it might be rejected by the surrogate. Besides, its proof and establishment as a valid will, if opposed, would involve considerable trouble and expense—much greater than if all opposition were withdrawn. Under these circumstances, the agreement between the parties was entered into and was kept and performed by the sisters, by which they lost their right to oppose the probate, with the chance of bettering their condition by a possible successful opposition. It was held in *Seaman* v. *Seaman*, (12 *Wend.* 381,) that the withdrawing of a *caveat* by an heir at law, to the proving of the will of his ancestor, is a sufficient consideration to support a promise by the assignees for the payment of a specific sum of money to the heir; and the court say, " whether he would have succeeded in the litigation, is not the test—it is enough that he yielded to his adversaries the right he possessed to contest the will; that he has done, and the compromise itself proves *prima facie* an acknowledgment by the defendant that there was color for his objection."

This decision covers the case, completely, on the question of consideration. (*See also* 21 *Eng. L. and Eq.* 199.) It has often been held that a compromise of a doubtful claim will support a promise to pay, and it has been said that it need not be a valid claim. Judge Bronson remarks in *Stewart* v. *Ahrenfeldt*, (4 *Denio*, 189,) that where an action is brought upon such promise, it is no answer to show that the first suit could not have been maintained, or that the claim was a valid one. Judge Cowen, in *Russell* v. *Cook*, (3 *Hill*, 504,) says—In such cases it matters not on which side the right ultimately turns out to be. The court will not look behind the compromise. (*See also* 8 *Barb.* 653, 4.)

These remarks, however, were made in regard to doubtful claims. So, too, the settlement of a suit is good consideration for a promise, even though no recovery could be had. In the absence of fraud, a very slight consideration is sufficient to uphold a promise. In this case there seems great propriety in the arrangement, which amounted to a compromise of a family difficulty, by the surrender of a substantial right given by law—fraught with danger to the promissor, and involving trouble and expense to the parties, with possible advantage to the promisees. There was clearly a good consideration for the promise.

Nor was the agreement void because made with married women. The contract had reference to their separate property. If the will had been invalid, for any reason, they would have taken an interest in the property left by their father, free of any claim by their husbands.

The referee was authorized to allow interest from the date of the establishment of the will before the surrogate as a valid instrument. The strength of the evidence is in favor of the conclusion that the money fell due at that time. There is nothing fixing definitely any other period, and the evidence points to that as the time when the duty to pay should be deemed fixed and absolute.

No point is made in the appellant's brief as to the admissibility of evidence. Nor do I discover on perusal of the case any ground of error in that regard. On the whole, I think the referee has done substantial justice between the parties.

The judgment should be affirmed.

[ST. LAWRENCE GENERAL TERM, October 1, 1861. *Rosekrans, Potter* and *Bockes,* Justices.]