CHARLES W. HILL vs. CITY OF BOSTON.

Suffolk.    March 6. — 12, 1877.    ENDICOTT, J., absent.

A child, att nding a public school in a school-house provided by a city, under the
duty imposed upon it by general laws, cannot maintain an action against the city
for an injury suffered by reason of the unsafe condition of a staircase in the school
house, over which he is passing.

GRAY, C. J.    This is an action of tort against the city of
Boston.   The plaintiff, who sues by his next friend, offered to
prove at the trial that in May, 1874, he was of the age of eight
years, and was a pupil attending a school in Boston, which was
one of the public schools which the city was bound by law to
keep and maintain ; that this school was on the third floor of
the building in which it was kept ; that the staircase was wind-
ing, and the railing thereof so low as to be dangerous ; that the
city negligently constructed and maintained the building, and
authorized the public schools to be kept therein ; and that the
plaintiff, while going to school, and being in the exercise of due
care, fell over the railing of the second flight of stairs, and was
seriously injured.

The plaintiff also offered to prove that the school committee
of the city, for a long time before the accident, knew the build-
ing to be dangerous and unfit for the purposes of a public school,
and had been notified by the teachers of the school of the dan-
gerous condition, and had promised to repair the same, and had
neglected to do so.   But the school committee is not charged by
law with any duty of erecting or constructing school-houses, but
only with that of keeping them in good order when built, and
with the general charge and management of the schools, and of
procuring a suitable place for the schools where there is no
school-house.   The duty to provide and maintain school-houses,
properly furnished, is imposed by general law upon all towns and
cities in the Commonwealth.   Gen. Sts. c. 3, § 7, cl. 17 ; c. 38,
§§ 36, 40.   Sts. 1821, c. 110, § 19 ; 1854, c. 448, § 56.   The dec-
laration does not proceed, and the learned counsel for the plain-
tiff does not rely, upon any negligence of the school committee,
but upon the negligence of the city in improperly constructing
the school-house ; and the length of time that the condition of

the staircase had existed, and been known to the school committee, is only material as bearing upon the question of negligence on the part of the city.

The question presented by the report is, whether, upon so much of the evidence offered as is competent, the plaintiff is entitled to recover; if he is, the case is to stand for trial; otherwise, judgment is to be entered for the defendant.

We had supposed it to be well settled in this Commonwealth that no private action, unless authorized by express statute, can be maintained against a city for the neglect of a public duty imposed upon it by law for the benefit of the public, and from the performance of which the corporation receives no profit or advantage. ' But, it having been suggested at the argument that che recent opinions of the Supreme Court of the United States tended to a different result, the respect due to that high court, even in matters in which we are not bound by its decisions, has led us to reëxamine the foundations upon which our law rests, and, in stating our conclusion, to make fuller reference to the authorities than might under other circumstances have been thought expedient.

The question has most commonly arisen in actions for defects in highways and bridges, by reason of which persons passing over them have received injuries.

By the common law of England, the charge of repairing highways lay upon the inhabitants of the parish, of common right, and could rest upon other corporations or individuals only by tenure or prescription. Lord Hale, in *Austin's case*, 1 Ventr. 183, 189. Com. Dig. Chimin, A. 4. Bac. Ab. Highways, E. 13 Rep. (ed. 1826) 33, note B. Bridges in highways, if " within any city or town corporate," were to be repaired by the inhabitants of such city or town ; if " without the city or town corporate," by the county ; and no other corporation or private person was bound to repair a bridge, unless by tenure or prescription. For want of repair in a private bridge, the person entitled to a passage over it might have a remedy by writ *de ponte reparando ;* but for want of repair in a public bridge, the remedy was by presentment or information at the suit of the King. "Where it cannot be known and proved what persons, lands, tenements and bodies politic " were bound to make or re-

pair a public bridge, the St. of 22 H. VIII. *c.* 5, provided a more speedy remedy to compel the inhabitants of the city, town or county to repair, by application to four justices of the peace. 3 Sts. of the Realm, 322. 2 Inst. 696–703. *Repair of Bridges,* 13 Rep. 33. *Regina* v. *Justices of St. Peter's,* 2 Ld. Raym. 1249, 1251. Com. Dig. Chimin, B. 3. Bac. Ab. Bridges.

Although the English books contain numerous cases of indictments or informations for neglect to repair highways and bridges, no instance has been referred to, in the frequent discussions of the subject in England and in this country, in which an English court has sustained a private action against a public or municipal corporation or *quasi* corporation for such neglect, except under a statute expressly or by necessary implication giving such a remedy.

The leading case, as it has generally been considered, is in Brooke's Abridgment, where it is thus stated : " Common highway is out of repair, so that I mire my horse, I shall not have an action against those who ought to repair it, for it is popular, and shall be reformed by presentment. *Quod nota per* Heidon, etc. 5 E. IV. 3." Bro. Ab. Accion sur le Case, pl. 93. In the year book referred to, the case is stated a little more fully : " If there be a common way, and it is not repaired, so that I am damaged by the miring of my horse, I shall not have any action for that against those who ought to repair the way, but it is a popular action, in which case no individual shall have an action on the case, but it is an action by way of presentment. *Quod nota per* Heydon, &c." 5 E. IV. 2, pl. 24. Haydon, here mentioned, appears to have been counsel only, and never a judge. 4 Foss's Judges of England, 402, 431. And the case might, at first sight, be supposed to be but a statement of the general rule that a public nuisance can be prosecuted by indictment only, and not by private action, and it was so treated in some early books. Bro. Ab. Nusance, pl. 29. *Williams's case,* 5 Rep. 72 *b,* 73 *a. Anon.* Moore, 180, pl. 321. But it has been uniformly understood in modern times as showing that it was because the highway ought to be repaired by the public, that the common law did not make an injury, arising from neglect to repair, a subject of private action, but only of indictment by the government. Lord Kenyon and Ashhurst, J., in *Russell* v. *Men of Devon,* 2 T. R. 667, 673.

Alderson, B., in *M'Kinnon* v. *Penson*, 8 Exch. 319, 321, 323.
Hannen, J., in *Gibson* v. *Mayor &c. of Preston*, L. R. 5 Q. B.
218, 222. Kent, C., in *Bartlett* v. *Crozier*, 17 Johns. 439, 454.
Hornblower, C. J., in *Freeholders of Sussex* v. *Strader*, 3 Harrison, 108, 121. Selden, J., in *Weet* v. *Brockport*, 16 N. Y. 161, 167, note.

In *Thomas* v. *Sorrell*, Vaugh. 330, 340, Chief Justice Vaughan, *argumdo*, said : " And note, if a man have particular damage by a foundrous way, he is generally without remedy, though the nuisance is to be punished by the King. The reason is, because a foundrous way, a decayed bridge, or the like, are commonly to be repaired by some township, vill, hamlet, or a county, who are not corporate, and therefore no action lies against them for a particular damage, but their neglects are to be presented, and they punished by fine to the King. But if a particular person or body corporate be to repair a certain highway, or portion of it, or a bridge, and a man is endamaged particularly by the foundrousness of the way, or decay of the bridge, he may have his action against the person or body corporate who ought to repair, for his damage, because he can bring his action against them ; but where there is no person against whom to bring his action, it is as if a man be damaged by one that cannot be known."

This statement was wholly *obiter dictum*, and the latter part of it would seem to refer to persons or corporations bound to repair by tenure or prescription. The final clause, unless it refers to the words of the St. of H. VIII., (quoted above,) defining the cases in which a special remedy might be had to compel a bridge to be repaired, is hardly intelligible ; for the inhabitants of a particular territory, who could be compelled to repair the way or bridge, or to pay a fine to the King, must be sufficiently known to be charged on execution in a private action. Lord Holt, upon an indictment against the inhabitants of a parish for not repairing a common way, said, " The matter is not at an end by the defendants being fined, but writs of *distringas* shall be awarded *in infinitum*, till we are certified that the way is repaired ; " *Regina* v. *Cluworth*, 1 Salk. 359 ; *S. C.* 6 Mod. 163 ; Holt, 339 ; and again, upon an information against the inhabitants of a county for not obeying an order of sessions to repair a bridge, " If it be not obeyed, an attachment may go against

the inhabitants of the whole county, and catch as many as one can of them." *The Queen* v. *Wilts*, 6 Mod. 191, 307 ; *S. C.* Holt, 339.

A municipal corporation might doubtless be bound by the terms and conditions of its charter, or by prescription, to repair even a place upon a private estate. For example, 'n an action on the case against the corporation of Lynn Regis, the declaration was for not repairing and cleansing a tide-water creek, as from time immemorial the corporation had been used to do ; and judgment thereon was held good, upon the grounds, as stated by Lord Mansfield, that the place in question did not appear to be a navigable river, and might be a creek in the plaintiff's private estate, and that the declaration in effect averred that the corporation " are bound. by prescription, and it might be the very condition and terms of their creation or charter." *Mayor of Lynn* v. *Turner*, Cowp. 86.

In *Russell* v. *Men of Devon*, 2 T. R. 667, in which an action was brought by an individual against the inhabitants of a county for an injury sustained in consequence of a county bridge being out of repair, the court, admitting that such an action could be maintained against an individual bound to repair a bridge, and that the inhabitants of a county might be a corporation for some purposes, held that they were not a corporation or *quasi* corporation against whom such an action as this could be maintained. The reasons assigned were, that there was no precedent for such an action ; that no such action had been given by statute; that the action was against the public ; that there was no corporation fund out of which satisfaction could be made, but the damages, if recovered, must be levied upon one or more of the inhabitants of the county ; and those who became inhabitants of the county, after the injury sustained, and before judgment, would be liable to contribute their proportion. And Ashhurst, J., observed : " It has been said that there is a principle of law in which this action may be maintained, namely, that where an individual sustains an injury by the neglect or default of another, the law gives him a remedy. But there is another general principle of law, which is more applicable to this case, that it is better that an individual should sustain an injury than that the public should suffer an inconvenience."

The towns and cities of Massachusetts have been established by the Legislature for public purposes and the administration of local affairs, and embrace all persons residing within their respective limits.

At the first settlement of the Colony, towns consisted of clusters of inhabitants dwelling near each other, which, by the effect of legislative acts, designating them by name, and conferring upon them the powers of managing their own prudential affairs, electing representatives and town officers, making by-laws, and disposing, subject to the paramount control of the Legislature, of unoccupied lands within their territory, became in effect municipal or *quasi* corporations, without any formal act of incorporation. *Porter* v. *Sullivan*, 7 Gray, 441, 444. *Commonwealth* v. *Roxbury*, 9 Gray, 451, 485. *West Roxbury* v. *Stoddard*, 7 Allen, 158, 169. *Lynn* v. *Nahant*, 113 Mass. 433, 448. By some of the earliest acts passed under the Province Charter, the boundaries of all existing towns were confirmed, and towns were empowered to assess and levy taxes for the maintenance and support of schools and of the poor, and the defraying of other necessary charges arising within the towns, and were declared to be capable of suing and being sued. Prov. Sts. 1692–93 (4 W. & M.) *c.* 28; 1694–95 (6 W. & M.) *c.* 13 ; 1 Prov. Laws (State ed.) 64, 66, 182; Anc. Chart. 247, 249, 279. Soon after the adoption of the Constitution of the Commonwealth, it was for the first time expressly enacted that " the inhabitants of every town within this government are hereby declared to be a body politic and corporate." St. 1785, *c.* 75, § 8. Rev. Sts. *c.* 15, § 8. Gen. Sts. *c.* 18, § 1. And it has always been recognized by this court, even before it was declared by statute, that towns, as well as counties, territorial parishes and school districts, by virtue of their existence as *quasi* corporations, were capable of holding property and making contracts for the purposes for which they were established. *Windham* v. *Portland*, 4 Mass. 384, 389. *Rumford School District* v. *Wood*, 13 Mass. 193, 198. *First Parish in Sutton* v. *Cole*, 3 Pick. 232, 240. Rev. Sts. *c.* 15, § 11, and Commissioners' note. Gen. Sts. *c.* 18, § 9.

By the common law of Massachusetts and of other New England States, derived from immemorial usage, the estate of any inhabitant of a county, town, territorial parish or school district,

is liable to be taken on execution on a judgment against the corporation. 5 Dane Ab. 158. *Hawkes* v. *Kennebeck*, 7 Mass. 461, 463. *Chase* v. *Merrimack Bank*, 19 Pick. 564, 569. *Gaskill* v. *Dudley*, 6 Met. 546. *Beardsley* v. *Smith*, 16 Conn. 368. In this Commonwealth, payment of such a judgment has never been compelled by mandamus against the corporation, as in other parts of the United States. Dillon on Mun. Corp. (2d ed.) §§ 446, 686. *Supervisors* v. *United States*, 4 Wall. 435.

From a very early period, towns have been, by general laws, required to keep highways and bridges in repair, and made liable to actions for defects therein by persons sustaining special damage in their persons or property. Mass. Col. St. 1648; 2 Mass. Col. Rec. 229; Mass. Col. Sts. (ed. 1672) 12. Prov. St. 1693–94 (5 W. & M.) c. 6, §§ 1, 6; 1 Prov. Laws (State ed.) 136, 137. Anc. Chart. 55, 56, 267, 269. St. 1786, c. 81, §§ 1, 7. Rev. Sts. c. 25, §§ 1, 22. St. 1850, c. 5. Gen. Sts. c. 44, §§ 1, 22. The case of *Horton* v. *Ipswich*, 12 Cush. 488, cited for the plaintiff, was an action upon such a statute.

In a case in this court in 1810, in which an action was maintained against a corporation chartered to maintain a canal and to take tolls thereon, for suffering its canal to be out of repair, whereby the plaintiff's raft stuck fast and was injured, Parsons, C. J., said, that although *quasi* corporations, such as counties and hundreds in England, and counties and towns in this state, were liable to information or indictment for a neglect of a public duty imposed on them by law, yet it was settled in the case of *Russell* v. *Men of Devon*, above cited, that no private action could be maintained against them for a breach of their corporate duty, unless such action was given by statute. *Riddle* v. *Proprietors of Locks & Canals*, 7 Mass. 169, 187.

Two years later, the question was directly presented for judgment, in an action at common law against a town for a personal injury caused by a defect in a highway, of which the town had not had the notice required to charge it under the statute. It was argued for the plaintiff, that none of the objections which prevailed in *Russell* v. *Men of Devon* applied, because here the town was a corporation created by statute, capable of suing and being sued, was bound by statute to keep the public highways in repair, was called upon to answer only for its own default,

and had a treasury out of which judgments recovered against it might be satisfied; and that the objection that a multiplicity of actions would be the consequence of levying the execution on one or more inhabitants of the town could have no effect, because it would equally apply to every action against a town or parish, and yet such actions were every day brought and supported. But the court arrested judgment, saying: " It is well settled that the common law gives no such action. Corporations created for their own benefit stand on the same ground, in this respect, as individuals. But *quasi* corporations, created by the Legislature for purposes of public policy, are subject, by the common law, to an indictment for the neglect of duties enjoined on them; but are not liable to an action for such neglect, unless the action be given by some statute." *Mower* v. *Leicester*, 9 Mass. 247, 250.

Those cases have ever since been considered as having established in this Commonwealth the general doctrine that a private action cannot be maintained against a town or other *quasi* corporation, for a neglect of corporate duty, unless such action is given by statute. *White* v. *Phillipston*, 10 Met. 108, 110. *Sawyer* v. *Northfield*, 7 Cush. 490, 494. *Bigelow* v. *Randolph*, 14 Gray, 541, 543. And they have been approved and followed throughout New England. *Adams* v. *Wiscasset Bank*, 1 Greenl. 361, 364. *Reed* v. *Belfast*, 20 Maine, 246, 248. *Farnum* v. *Concord*, 2 N. H. 392. *Eastman* v. *Meredith*, 36 N. H. 284, 297–300. *Hyde* v. *Jamaica*, 27 Vt. 443, 457. *State* v. *Burlington*, 36 Vt. 521, 524. *Chidsey* v. *Canton*, 17 Conn. 475, 478. *Taylor* v. *Peckham*, 8 R. I. 349, 352.

In *Bartlett* v. *Crozier*, 17 Johns. 439, a traveller, whose horse suffered injury from a defect in a bridge, brought an action against a surveyor of highways, under a statute of New York, which imposed the duties of repairing highways and bridges on commissioners of highways and surveyors. Chancellor Kent, delivering the unanimous opinion of the Court of Errors, and overruling the decision of the Supreme Court in 15 Johns. 250, held that the action would not lie, citing the early English authorities, and observing that the case of *Russell* v. *Men of Devon*, with the reference therein to the case in 5 E. IV., " is an authority equally to show that no private suit will lie in a case

of a broken bridge, which is to be repaired by the county, or of
a bad road, which is to be repaired by the parish ; " and that
when the judges admitted that such an action would lie against
an individual bound to repair a bridge, " they must have alluded
to such cases as those mentioned by Lord Coke, in which an
individual or a corporation may be bound to repair a private
bridge, or a public bridge, by reason of tenure or prescription,
or the grant of the toll." And the Chancellor said that the fact
that under the English law, as under the law of New York, offi-
cers existed, and had been known from ancient times, charged
with repairing the roads and bridges, and yet there was no pre-
cedent, in the English books or under the colonial government,
of any such private action, afforded a very strong presumption
that no such action would lie; and that if the Legislature had
intended to introduce a new rule upon the subject, the law would
and ought to have been explicit. 17 Johns. 452–455.

In *Freeholders of Sussex* v. *Strader*, 3 Harrison, 108, a similar
decision was made by the Supreme Court of New Jersey; and
Hornblower, C. J., and Dayton, J., in able and learned opinions,
affirmed the exemption of counties and towns, although by stat-
ute made corporations capable of suing and being sued, from
liability to private actions for defects in highways or bridges.
And it has since been considered settled law in that state that
they are not so liable, except where the right of action has been
expressly given by statute. *Cooley* v. *Freeholders of Essex*, 3
Dutcher, 415. *Livermore* v. *Freeholders of Camden*, 5 Dutcher,
245, and 2 Vroom, 507.

In *Commissioners of Highways* v. *Martin*, 4 Mich. 557, it was
held that towns, though by statute made corporations capable
of suing and being sued, were not liable to actions for damages
sustained by individuals in consequence of want of repair in a
bridge and highway, and could not be subjected to such liability
by bringing the action against the commissioners of highways.
And in Illinois it is held that neither counties, though made by
statute bodies corporate and politic, with power to make and
enter into contracts, and to sue and be sued thereon, nor town-
ships established as civil divisions of counties, are liable to ac-
tion for defects in highways or bridges. *Hedges* v. *Madison*, 1
Gilman, 567. *White* v. *Bond*, 58 Ill. 297. *Waltham* v. *Kemper*,
55 Ill. 346. *Bussell* v. *Steuben*, 57 Ill. 35.

The same rule has been applied to actions for negligent and defective construction of buildings, erected by a county or town, pursuant to a duty imposed upon it by general law for public objects.

In *Freeholders of Sussex* v. *Strader*, Hornblower, C. J., said: "It is the duty, for instance, of the board of freeholders to erect and keep in repair court-houses and jails; a neglect to do so may occasion great inconvenience, perhaps positive loss and injury, to some individual whose business or duty requires his attendance at court; the building by being old and out of repair may give way, and break a man's limbs, or occasion him an injury in some other way: but no one will pretend that in such case an action would lie by the person injured against the county." 3 Harrison, 121.

In *Hamilton Commissioners* v. *Mighels*, 7 Ohio St. 109, it was held, upon elaborate consideration, that a county, sued through its commissioners, who were authorized by statute to sue and be sued on any contract for the erection or repair of public buildings or bridges, or other contract which they were authorized to enter into, was not liable to an action for the negligent and improper construction of a court-house built by the commissioners, whereby a witness, summoned to attend court therein, fell into the cellar and was severely injured.

In *Eastman* v. *Meredith*, 36 N. H. 284, which was an action by an inhabitant and legal voter in a town, attending a town meeting in the town-house, the floor of which gave way by reason of being negligently and imperfectly constructed, it was held, in a masterly opinion by Perley, C. J., reviewing the authorities, that, assuming it to be the duty of the town to provide a safe and suitable place for a town meeting, yet a citizen of the town, who suffered a private injury in the exercise of his public rights, from neglect of the town in the performance of this public duty, could not maintain an action against the town to recover damages for the injury.

So in *Bigelow* v. *Randolph*, 14 Gray, 541, this court held that a town, which had erected a school-house in the performance of the duty imposed upon it by general law, was not liable to an action for an injury sustained by a scholar, attending school therein, from a dangerous excavation in the school-house yard,

which had been negligently permitted to remain insufficiently guarded.

The fact that the present action is brought against the city of Boston, and not against a county or town, does not, under the Constitution and laws of this Commonwealth, constitute any substantial distinction.

The reference by Parsons, C. J., in *Riddle* v. *Proprietors of Locks & Canals*, 7 Mass. 169, 188, to *Mayor of Lynn* v. *Turner*, Cowp. 86, cited and explained above, was in answer to the position of counsel that a corporation was not liable to an action on the case for any neglect of corporate duty. The case before him was of a canal corporation taking tolls for its own profit, and there were at that time no cities in Massachusetts.

The second article of amendment of the Constitution of the Commonwealth, by which the Legislature was first vested with the power of establishing cities, ordains as follows: " The General Court shall have full power and authority to erect and constitute municipal or city governments, in any corporate town or towns in this Commonwealth, and to grant to the inhabitants thereof such powers, privileges and immunities, not repugnant to the Constitution, as the General Court shall deem necessary or expedient for the regulation and government thereof, and to prescribe the manner of calling and holding public meetings of the inhabitants in wards or otherwise, for the election of officers under the Constitution, and the manner of returning the votes given at such meetings: Provided, that no such government shall be erected or constituted in any town not containing twelve thousand inhabitants, nor unless it be with the consent and on the application of a majority of the inhabitants of such town, present and voting thereon, pursuant to a vote at a meeting duly warned and holden for that purpose: And provided also, that all by-laws made by such municipal or city government shall be subject, at all times, to be annulled by the General Court."

The article does not speak of granting charters or acts of incorporation, but of " erecting and constituting municipal or city governments ; " by the words " in any corporate town or towns," it clearly shows that the towns are already corporations ; and the powers and privileges to be granted are such " as the Gen

eral Court shall deem necessary or expedient for the regulation and government " of the inhabitants. The article throughout shows that the establishment of a city is deemed to be an act done by the Legislature for the convenient and efficient admin- istration of local government, and not for the purpose of con- ferring any peculiar benefit. on the municipality or its inhabi- tants.

The purpose and effect of the change in the form of municipal governments in this Commonwealth, under the amendment of the Constitution, have been clearly set forth by Chief Justice Shaw, who was its leading supporter in the Convention of 1820, who is understood to have drafted the first charter granted under it, the original act to establish the city of Boston, (which has been in great part the model upon which the city charters since granted have been framed,) and who, while presiding in this court, had occasion to expound it.

In the Convention, the article having been reported in very nearly the words in which it now stands, by a committee of which Mr. Webster was chairman, Mr. Shaw " disclaimed all idea of claiming powers or privileges for one class of citizens, which were not to be equally extended to another. But an act of incorporation for municipal purposes is equally enjoyed by all the towns in the Commonwealth. In other countries, cities were incorporated with substantial powers and privileges — the right of choosing municipal officers ; the right of superintend- ing subjects of local administration, and, in England, the right of choosing members of Parliament. But in this Common- wealth, every town is to all substantial purposes a city. They are towns corporate, having the power of choosing their own officers and sending members to the General Court, with juris- diction over all their local and prudential concerns, such as the support of schools and highways, the relief of the poor, the superintendence of licensed houses, and other matters of local police. They have the power of making by-laws, and assessing and collecting taxes. They possess all the powers and privileges of municipal corporations in Great Britain or in this country." He then pointed out that the existing Constitution required a form of town government not adapted to the condition of a pop- ulous town, because it made it imperative that the voters should

meet together in one body, be they few or many.; and said·
"This then is the essential difficulty. The General Court can
grant powers as occasion may require, but cannot dispense with
the mode of organization required by the Constitution. What
then is the remedy? It is to authorize such an organization as
is adapted to the condition of a numerous people — such an
organization as will admit the inhabitants to meet in sections for
the purposes of election, and choose representatives who should
meet for the purpose of deliberation instead of the whole body."
Debates in Convention of 1820, (ed. 1853,) 125, 192, 193. And
see *Warren* v. *Mayor & Aldermen of Charlestown*, 2 Gray, 84,
101.

In *Overseers of the Poor* v. *Sears*, 22 Pick. 122, 130, 133, in
which it was held that the overseers of the poor of the city of
Boston, elected under the city charter, continued to be the same
corporation as the overseers of the poor of the town of Boston,
who had been made a corporation by a provincial statute of
1772, Chief Justice Shaw said that, at the time of the passage
of that statute, " towns were of themselves corporations, having
perpetual succession, consisting of all persons inhabiting within
certain territorial limits ; " that " in all *quasi* corporations, as
cities, towns, parishes, school districts, membership is constituted
by living within certain limits ; " that " in regard to the munici-
pal body itself, to which the board of overseers was incident, the
act " establishing the city of Boston " seems sedulously to guard
against the construction, that by its operation one corporation
was discontinued and another established as its successor ; " and,
as showing that " the town was continued a municipal corpora-
tion, with a change of form and organization only," he quoted
the first section of that act, by which it was enacted that " the
inhabitants of the town of Boston, for all purposes for which
towns are by law incorporated in this Commonwealth, shall con-
tinue to be one body politic, in fact and in name, under the style
and denomination of the city of Boston ; and as such shall have,
exercise and enjoy all the rights, immunities, powers and privi-
leges, and shall be subject to all the duties and obligations, now
incumbent upon, and appertaining to said town, as a municipal
corporation." St. 1821, *c.* 110, § 1.

The Constitution does not indeed allow a city to be established in the first instance, so as to transfer the immediate control of local affairs from the whole body of citizens in town meeting to a delegated city council, except with the consent and on the application of a majority of the inhabitants. But when a city has once been established, the question of a change of its boundaries, or of the annexation of a town to it, depends exclusively upon the judgment of the Legislature, and does not require the assent of any municipal corporation, or of the inhabitants of the territory to be annexed, whose property, upon such annexation, will become liable to be taken on execution for the debts of the city ; nor is it in the power of a town to appropriate money either to forward or to prevent such annexation. *Chandler* v. *Boston*, 112 Mass. 200. *Stone* v. *Charlestown*, 114 Mass. 214, 220, 221. *Minot* v. *West Roxbury*, 112 Mass. 1. *Coolidge* v. *Brookline*, 114 Mass. 592.

In this Commonwealth, an act of the Legislature changing a town into a city has never been considered as enlarging civil remedies for neglect of corporate duty; and it has been constantly held that a city, like a town, is not liable to an action for a defect in a highway, except so far as the right to maintain such an action has been clearly given by statute. *Brady* v. *Lowell*, 3 Cush. 121. *Harwood* v. *Lowell*, 4 Cush. 310. *Hixon* v. *Lowell*, 13 Gray, 59, 64. *Oliver* v. *Worcester*, 102 Mass. 489. The same view has been taken in other New England States, and in New Jersey, Michigan and California. *Morgan* v. *Hallowell*, 57 Maine, 375, 378. *Jones* v. *New Haven*, 34 Conn. 1, 13. *Hewison* v. *New Haven*, 37 Conn. 475. *Pray* v. *Jersey City*, 3 Vroom, 394. *Detroit* v. *Blackeby*, 21 Mich. 84. *Winbigler* v. *Los Angeles*, 45 Cal. 36.

Neither the act which originally established the city of Boston, St. 1821, *c.* 110, nor the act to revise the city charter, St. 1854, *c.* 448, contains any provision as to the duty of the city to repair highways, or to provide school-houses. Each of these duties depends upon general laws, applicable to all cities and towns alike. As to highways, the duty is regulated by the Gen. Sts. *c.* 44, §§ 1, 21, 22. The duty as to school-houses is governed by the Gen. Sts. *c.* 38, § 36, which enact that "every town, not divided into school-districts, shall provide and maintain a sufficient

number of school-houses, properly furnished and conveniently located, for the accommodation of all the children therein entitled to attend the public schools." This enactment, by virtue of *c.* 3, § 7, *cl.* 17, includes cities as well as towns. The only remedy which the statutes give for refusal or neglect to comply with its requisitions is by indictment. St. 1871, *c.* 145.

Assuming, therefore, that the form of the staircases of school-houses is not left exclusively to the discretion of the city, and that the negligence offered to be proved at the trial might be a cause of indictment, it is quite clear that, according to the statutes and decisions in this Commonwealth, it affords no ground of private action against the city. But it may be convenient, in this connection, to distinguish some of the principal cases in which this court has held cities liable to actions of tort by individuals.

If a city or town negligently constructs or maintains the bridges or culverts in a highway across a navigable river, or a natural watercourse, so as to cause the water to flow back upon and injure the land of another, it is liable to an action of tort, to the same extent that any corporation or individual would be liable for doing similar acts. *Anthony* v. *Adams*, 1 Met. 284, 285. *Lawrence* v. *Fairhaven*, 5 Gray, 110. *Perry* v. *Worcester*, 6 Gray, 544. *Parker* v. *Lowell*, 11 Gray, 353. *Wheeler* v. *Worcester*, 10 Allen, 591. So if a city, by its agents, without authority of law, makes or empties a common sewer upon the property of another to his injury, it is liable to him in an action of tort. *Proprietors of Locks & Canals* v. *Lowell*, 7 Gray, 223. *Hildreth* v. *Lowell*, 11 Gray, 345. *Haskell* .v. *New Bedford*, 108 Mass. 208. But in such cases, the cause of action is not neglect in the performance of a corporate duty, rendering a public work unfit for the purposes for which it is intended, but it is the doing of a wrongful act, causing a direct injury to the property of another, outside of the limits of the public work.

As to common sewers, built by municipal authorities under a power conferred by law, it has been held, upon great consideration, that, as the power of determining where the sewers shall be made involves the exercise of a large and *quasi* judicial discretion, depending upon considerations affecting the public health and general convenience, therefore no action lies for a

defect or want of sufficiency in the plan or system of drainage adopted within the authority so conferred; but that, as the sewer acts were not made applicable to any city, unless accepted by it, and, when accepted, and the sewers built, vested in the city the property in the sewers, and authorized it to assess the expense of construction upon the lands immediately benefited, and as the duty of constructing the sewers and keeping them in repair was merely ministerial, therefore, for neglect in the construction or repair of any particular sewer, whereby private property was injured, an action might be maintained against the city. Gen. Sts. *c.* 48. Sts. 1841, *c.* 115; 1857, *c.* 225; 1869, *c.* 111. *Child* v. *Boston,* 4 Allen, 41. *Emery* v. *Lowell,* 104 Mass. 13. *Merrifield* v. *Worcester,* 110 Mass. 216.

The only other cases in Massachusetts, which need be mentioned, are those in which a city, holding and dealing with property as its own, not in the discharge of a public duty, nor for the direct and immediate use of the public, but for its own benefit, by receiving rents or otherwise, in the same way as a private owner might, has been held liable, to the same extent as he would be, for negligence in the management or use of such property to the injury of others. *Thayer* v. *Boston,* 19 Pick. 511. *Oliver* v. *Worcester,* 102 Mass. 489. The distinction between acts done by a city in discharge of a public duty, and acts done for what has been called, by way of distinction, its private advantage or emolument, has been clearly pointed out by two eminent judges, while sitting in the supreme courts of their respective states, who have since acquired a wider reputation in the Supreme Court of the Union, and by the present Chief Justice of England. Nelson, C. J., in *Bailey* v. *Mayor &c. of New York,* 3 Hill, 531, 539. Strong, J., in *Western Saving Fund Society* v. *Philadelphia,* 31 Penn. St. 185, 189. Cockburn, C. J., in *Scott* v. *Mayor &c. of Manchester,* 2 H. & N. 204, 210.

The earliest and the most important of the modern English cases upon this subject, and the one which has been most often cited in this country to establish the general doctrine that a municipal corporation, required by law to construct and keep in repair highways, buildings or public works, for the benefit of the public, is liable to an action for negligence in such construction or repair, whereby the plaintiff suffers special injury, is *Henly*

**v.** *Mayor of Lyme*, decided successively in the Court of Common Pleas; 5 Bing. 91 ; 3 Mo. & P. 278 ; in the King's Bench; 3 B. & Ad. 77; and in the House of Lords.   2 Cl. & Fin. 331 ; 8 Bligh N. R. 690 ; 1 Bing. N. C. 222 ; 1 Scott, 29.

But the decision affirmed no such general doctrine.   The corporation of Lyme was held liable to a private action for damages suffered by reason of its neglect to repair certain sea walls, upon the ground that the royal charter, which had been accepted by the corporation, manifested an intention to render the corporation liable to such suits, because the charter showed that the duty to make such repairs was the condition and consideration upon which the corporation was granted certain franchises and acquitted of certain rents.   This is distinctly stated in the judgment of the Court of Common Pleas, delivered by Best, C. J. ; 5 Bing. 107 ; in that of the King's Bench, delivered by Lord Tenterden ; 3 B. & Ad. 91; and in the opinion of the judges, delivered by Park, J., in the House of Lords, and affirmed by the judgment of that house.   2 Cl. & Fin. 349, 350, 356.

Mr. Justice Park, in a subsequent part of that opinion, indeed said: " It is clear and undoubted law that, wherever an indictment lies for non-repair, an action on the case will lie at the suit of a party sustaining any peculiar damage."   2 Cl. & Fin. 354. Those words, taking them out of the connection .in which they were uttered, have been sometimes cited as affirming a universal rule.   But the context shows that he was speaking only of liability arising by prescription, from which, as he went on to say, a liability proved by the terms of a special charter could not be distinguished.   To give his words the broader construction would extend them to counties and parishes, and make them inconsistent with the uniform current of earlier and later English authorities.   The inhabitants of the county of Devon, who were held by the Court of King's Bench, in *Russell* v. *Men of Devon*, before cited, not to be liable to action for a defect in a bridge, were held in the same court, not many years after, to be subject to indictment for a like cause.   *The King* v. *Inhabitants of Devon*, 14 East, 477.

That the decision in *Henly* v. *Mayor of Lyme* has never been considered in England as establishing such a universal rule is apparent from the later English cases.   If the mere obligation to

repair and liability to indictment made a municipal corporation liable to private action, the English courts would have been spared the necessity of scrutinizing the phraseology of many acts of Parliament, and several cases which have been decided in favor of the defendants must have been decided in favor of the plaintiffs.

The English. authorities uniformly hold that a county, town or parish being liable at common law to indictment only, and not to action, for neglect to repair a highway, therefore, when the duty to repair, which before rested upon the county, town or parish is transferred by statute to a public officer, or to a municipal corporation or a board incorporated for the purpose, such officer or corporation is no more liable to private action than the county, town or parish previously was, unless the statute transferring the duty clearly manifests an intention in the Legislature to impose the additional liability.

In *M'Kinnon* v. *Penson,* in the Court of Exchequer, Pollock, C. B., said that the only reason why the action would not lie in *Russell* v. *Men of Devon* was because the inhabitants of a county were not a corporation and could not be sued. 8 Exch. 319, 327. But in the judgment of the Court of Exchequer Chamber, delivered by Coleridge, J., the decision in the *Case of the Men of Devon* was understood to rest upon more general considerations. 9 Exch. 609, 612, 613. And both courts unanimously held that the St. of 43 G. III. *c.* 59, § 4, enabling counties to sue for any damages done to bridges and other works maintained and repaired at their expense, and for the recovery of property belonging to them, in the name of their surveyor, and also to be sued in his name, did not enable an action to be brought against a county in the name of its surveyor for a personal and peculiar damage resulting from a want of repair in a county bridge.

In *Young* v. *Davis,* 7 H. & N. 760, and 2 H. & C. 197, the same courts held that, under the St. of 5 & 6 W. IV. *c.* 50, to consolidate and amend the highway acts, which required, by § 6, every parish maintaining its own highways to elect annually a surveyor, who should "repair and keep in repair the several highways in the said parish," no action could be maintained against the surveyor for neglect to repair; and declared that before the statute no such action would have been maintainable

against the parish or its servants, but the only remedy would have been by indictment against the parish; and Willes, J., who delivered the judgment in the Exchequer Chamber, observed that this act of Parliament "appears not to have been passed for the purpose of creating a new liability either in the parish or any other persons, but simply in order to provide machinery whereby the existing duty of the parish to repair may be conveniently fulfilled." 2 H. & C. 198.

In *Southampton & Itchin Bridge* v. *Southampton Board of Health*, 8 E. & B. 801, the Mayor, Aldermen and Burgesses of Southampton, who had been made by act of Parliament the local board of health, were held liable to an action for negligence in constructing and managing a sewer, so that the filth and sewage matter obstructed the plaintiff's bridge and created offensive and pernicious stenches about it. Lord Campbell, in the course of the argument, said he did not agree that a body, constituted as this was, was *primâ facie* liable to an action of this sort; and, at the beginning of his opinion, observed that what the liability of the defendants was, if any, must be determined by a true interpretation of the statute by which they were created. The ground on which the defendants in that case, as well as in the similar one of *Ruck* v. *Williams*, 3 H. & N. 308, were held liable, was that Parliament, by enacting that the board of health, or any officer or person acting under its direction, should have notice of any action for anything done, or intended to be done, under the provisions of the act, and might tender amends, and should not be personally subject to action or liability, but should be reimbursed for any expense incurred out of the rates which the board was authorized by the act to levy, had manifested an intention that the board might be sued. St. 11 & 12 Vict. c. 63, §§ 139, 140. And those decisions may well stand upon the reasons upon which actions have been maintained by this court for neglect in the construction or repair of sewers.

In *Hartnall* v. *Ryde Commissioners*, 4 B. & S. 361, and *Ohrby* v. *Same*, 5 B. & S. 743, commissioners, who, by special act of Parliament, had been intrusted with the management of highways in a particular town, and declared to be surveyors of highways therein, and to be guilty of a misdemeanor if they should refuse or neglect to repair any public highway, and to be liable

to indictment for such refusal or neglect, in the same manner as the inhabitants thereof, or of any parish, township or other district therein, were previously liable, and had been empowered to lay a rate for general purposes, were held liable to actions by travellers on the highway for injuries suffered from defects therein. But, as was pointed out by Shee, J., that statute further required the commissioners to pay and make good to all persons all damages " of what nature or kind soever, as well immediate as consequential," sustained by them, " by reason or in consequence of the bursting, leaking, failure or insufficiency " of any works constructed by the commissioners. 5 B. & S. 748. Those cases, therefore, if well decided, fall within the class in which the peculiar terms of a special act of Parliament have been held to manifest the intention of the Legislature to confer a right of private action. But it should be observed that *Hartnall's case* was decided by only two judges; that *Ohrby's case* was finally put upon the ground that the court was bound by the decision in *Hartnall's case*, which could only be questioned in a court of error; 5 B. & S. 750; and that the cases have since been cited, by each of the principal common law courts, only to be distinguished. *Parsons* v. *St. Mathew's Vestry*, L. R. 3 C. P. 56, 59, 60. *Wilson* v. *Mayor &c. of Halifax*, L. R. 3 Ex. 114, 119. *Gibson* v. *Mayor &c. of Preston*, L. R. 5 Q. B. 218, 223.

In *Parsons* v. *St. Mathew's Vestry*, the Court of Common Pleas, applying the principle of *M'Kinnon* v. *Penson* and *Young* v. *Davis*, above cited, held that, under the St. of 18 & 19 Vict. c. 120, incorporating vestries or boards of health in each parish in or about London, and vesting in them the powers of commissioners of sewers, paving commissioners and surveyors of highways, and of paying the expenses out of the rates which they were authorized to levy, such a vestry was not liable to an action by a traveller for an injury sustained by a defect in a highway.

By the Public Health Act of 1848, it was enacted that all highways within any district should vest in and be under the management and control of the local board of health, and that such board should from time to time cause the same to be repaired, and should within the limits of its district execute the office of surveyor of highways, and have all his powers, duties and lia-

bilities. St. 11 & 12 Vict. *c.* 63, §§ 68, 117. In *Wilson* **v.** *Mayor &c. of Halifax*, in the Court of Exchequer, Kelly, C. B., after alluding to a supposed conflict between the cases of *Hartnall* v. *Ryde Commissioners* and *Parsons* v. *St. Mathew's Vestry*, said: "It does not seem to us to be necessarily so; but should a case arise in which the question shall be whether the 68th section of the Public Health Act, 1848, imposes upon the local authority the liability to be sued in a civil action for damages, by reason of a failure to perform a duty assigned to them by the act, we should pause before we could hold that, in addition to the well established remedy by indictment, every individual among the public would have a right of action for any and every injury resulting from such breach of duty."

In *Gibson* v. *Mayor &c. of Preston*, the question arose in the Queen's Bench, and was decided in favor of the Mayor, Aldermen and Burgesses of Preston, who were the local board of health in that borough. The judgment of the court, consisting of Cockburn, C. J., Mellor, Lush and Hannen, JJ., was delivered by Hannen, J., reviewing and approving the cases of *Russell* v. *Men of Devon*, *M'Kinnon* v. *Penson* and *Young* v. *Davis*, and stating the reasons upon which they proceeded, and adding : "But, whatever the reason was, the fact remains, that no action could be maintained for an injury arising from the non-repair of a highway by the parish, and the Legislature has not interfered by any general enactment to give a remedy by action to persons sustaining such an injury. It is, therefore, incumbent on a plaintiff, who seeks to establish that such a right is exceptionally given to persons sustaining an injury in a particular district, to show distinctly that the Legislature had such an intention in passing the enactment to which such an effect is attributed."

In *Foreman* v. *Mayor &c. of Canterbury*, L. R. 6 Q. B. 214, it was held that the Mayor, Aldermen and Burgesses of Canterbury, who were by the same act of Parliament the local board of health and surveyors of highways, were liable to an action by a traveller who suffered an injury by driving against a heap of stones which had been broken for the purpose of mending the highway, and left in the highway at night, without light or guard. But, at the trial of that case, it had been taken for granted that there was negligence in some one, and it had been

expressly admitted that the person who did the act was the servant of the defendants ; and the judgment of the court, delivered by Blackburn, J., was distinctly put upon the ground that the defendants would not be liable simply because they were surveyors of highways, but that they were not, merely because they were surveyors, exempted from the liability which any person or corporation would incur for placing an obstruction in the highway. And in like cases since, the liability has been held to depend, not upon the defendant's relation to the highway by reason of being charged with the duty of repairing it, but upon the question whether the obstruction was placed in the highway by the defendant, or the defendant's servants. *Taylor* v. *Greenhalgh,* L. R. 9 Q. B. 487. *Pendlebury* v. *Greenhalgh,* 1 Q. B. D. 36.

In *White* v. *Hindley Local Board,* L. R. 10 Q. B. 219, which was an action against a local board of health by a person injured by treading upon a grating in the highway, which had been put there to drain the water into a common sewer, Blackburn, J., referred to *Gibson* v. *Mayor &c. of Preston* and *Parsons* v. *St. Mathew's Vestry* as establishing that the defendants would not be liable for non-repair of the highway; and they were held liable, only as owners of the sewer, of which the court considered the grating to be a part, and which had been left in a dangerous condition for six months. The case was thus brought within the rule which governed the decisions of this court in *Child* v. *Boston,* 4 Allen, 41, and *Emery* v. *Lowell,* 104 Mass. 13, already referred to.

In *Whitehouse* v. *Fellowes,* 10 C. B. (N. S.) 765, the action was against the trustees of a turnpike road, for so negligently constructing and keeping catchpits by the side of the road, and cutting outlets into the adjoining land, that the water, thereby collected and poured off, flowed into and drowned the plaintiff's colliery. In *Brownlow* v. *Metropolitan Board of Works,* 13 C. B. (N. S.) 768, and 16 C. B. (N. S.) 546, a public board authorized to construct sewers, but which in excess of its authority had made an obstruction which was a public nuisance in the bed of a navigable river, was held liable to one whose vessel suffered injury thereby. These cases fall within the same principle as *Haskell* v. *New Bedford,* 108 Mass. 208, and other decisions of this court, already cited, in which, by a wrongful act, a direct injury was done

to the plaintiff's property beyond the lawful limits of the public work.

In *Parnaby* v. *Lancaster Canal*, 11 A. & E. 223; *S. C.* 3 N. & P. 523, and 3 P. & Dav. 162; the liability of the defendant for an injury suffered from its negligence in keeping its canal in repair was put by the courts of Queen's Bench and Exchequer Chamber upon the ground that it was a private corporation, which made the canal and took tolls thereon for its own profit — making the same distinction which had nearly thirty years before been laid down by this court in *Riddle* v. *Proprietors of Locks & Canals*, 7 Mass. 169, 187.

In *Scott* v. *Mayor &c. of Manchester*, 1 H. & N. 59, and 2 H. & N. 204, a municipal corporation, empowered by act of Parliament to construct gas-works, and to supply the gas upon such terms as might be agreed upon with the persons supplied, and to sell and dispose of the coke, and to apply the surplus profits to the improvement of the town, was held liable for a personal injury caused by the negligence of a workman employed by the corporation to lay the gas-pipes. But the reason of that decision, as declared by Cockburn, C. J., delivering the judgment in the Exchequer Chamber, was that "the corporation and the township derive a profit from the carrying on of the works;" or, as he afterwards said, "the defendants were thus in the nature of a trading corporation." 2 H. & N. 210. *Coe* v. *Wise*, 5 B. & S. 440, 475.

To the same class belongs *Cowley* v. *Mayor &c. of Sunderland*, 6 H. & N. 565, in which the defendants were held liable for a personal injury suffered from the negligent and dangerous construction of machines in wash-houses, which they had been authorized by statute to erect, and for the use of which the plaintiff and other persons using the same paid them compensation.

In the cases of *Mersey Docks* v. *Gibbs & Penhallow*, L. R. 1 H. L. 93, and 11 H. L. Cas. 686, the House of Lords, affirming the judgments in the Exchequer Chamber in 3 H. & N. 164, and 7 H. & N. 329, and reversing the judgment of the Court of Exchequer in 1 H. & N. 439, held that the members of the town council of Liverpool and their successors, who had been formed by acts of Parliament into a corporation by the style of the Trustees of the Liverpool Docks, were liable for an injury to a

vessel from a bank of mud which had been negligently suffered to remain in the docks. That case has been so often relied on by American courts as extending the liability of municipal corporations to private action, that it is important to consider the substance of the acts of Parliament by which the corporation was created, and the grounds upon which the decision proceeded.

The effect of those acts of Parliament, as defined by Blackburn, J., in delivering the opinion of the judges, which was approved by the House of Lords, was that the dock trustees were empowered to make and maintain docks and warehouses which were to be open to the use of the public, paying dock rates for the use of the docks and warehouse rates for the use of the warehouses; the same accommodation and the same services were to be supplied to those using the docks and the warehouses respectively, that would have been supplied by any ordinary dock and warehouse proprietors to their customers; powers were given to the trustees from time to time to close the docks for the purpose of cleansing and repair; the revenues were to be applied in the first instance to making and maintaining the docks, and paying all the charges and expenses incurred in carrying into execution, or under or in consequence of, the acts of Parliament, and the interest, and ultimately the principal, of a large debt secured by the dock rates; and, when it was all paid off, the trustees were required to lower the rates as far as could be done, leaving sufficient for defraying all charges of management and other concerns of the docks, and of improving, repairing and maintaining the same, and of carrying into execution the provisions of the acts of Parliament. L. R. 1 H. L. 105, 106.

In delivering judgment in the Exchequer Chamber, Coleridge, J., said: " The case of *The Lancaster Canal Company* v. *Parnaby*, 11 A. & E. 222, establishes that the defendants would have been responsible under such circumstances if they had had a beneficial interest in the tolls when received; and we do not think the principle of that decision inapplicable, because the defendants in the present case received the tolls as trustees. The duty, in our opinion, is equally cast on those who have the receipt of the tolls and the possession and management of the dock vested in them, to forbear from keeping it open for the public use of every one who chooses to navigate it on payment of the

tolls, when they know it cannot be navigated without danger, whether the tolls are received for a beneficial, or for a fiduciary purpose; and for the consequences of this breach of duty we think they are responsible in an action." 3 H. & N. 176, 177.

In the House of Lords, the grounds of the decision were, that in every case the liability of a body created by statute must be determined upon a true interpretation of the statute under which it is created; L. R. 1 H. L. 104, 118 ; that corporations like the present, formed for trading and other profitable purposes, though acting without reward to themselves, yet in their very nature are substitutions on a large scale for individual enterprise, and, in the absence of anything in the statutes which create such corporations, showing a contrary intention in the Legislature, the true rule of construction is, that the Legislature intended that the liability of corporations thus substituted for individuals should, to the extent of their corporate funds, be coextensive with that imposed by the general law on the owners of similar works; p. 107 ; and that the House of Lords had already decided, in *Jones* v. *Mersey Docks*, 11 H. L. Cas. 443, that the Trustees of the Liverpool Docks were liable to pay poor rates as occupiers of the docks, for the very reason that they did not occupy as servants of the public or government. L. R. 1 H. L. 108, 112.

Lord Chancellor Cranworth, after saying that the fact that those in whom the docks were vested did not collect tolls for their own profit, but merely as trustees for the benefit of the public, made no difference in principle in respect to their liability, added : " It would be a strange distinction to persons coming with their ships to different ports of this country, that in some ports, if they sustain damage by the negligence of those who have the management of the docks, they will be entitled to compensation, and in others they will not; such a distinction arising, not from any visible difference in the docks themselves, but from some municipal difference in the constitution of the bodies by whom the docks are managed." L. R. 1 H. L. 122, 123.

Two other English cases, in which corporations created to construct and maintain public works of a peculiar nature in a certain locality were held liable to private action for special injuries, fall clearly within the principle of *Mersey Docks* v. *Gibbs*, and were decided upon that ground. *Coe* v. *Wise*, 5 B. & S. 440,

and L. R. 1 Q. B. 711. *Winch* v. *Conservators of the Thames,* L. R. 7 C. P. 458, and L. R. 9 C. P. 378. In *Coe* v. *Wise,* commissioners for carrying into execution a local act of Parliament for the drainage and navigation of a particular tract of country were held liable for the flooding of adjoining lands by reason of negligence in keeping in repair a cut and sluice properly made, and which they were required by the statute to make and maintain ; but the statute not only vested in the commissioners all lands acquired under the act, and all chattels supplied for the purposes of the act, but provided that, in all actions and suits in respect of any matter or thing relating to the execution of this act, the commissioners might be sued by their clerk, and execution should go against the goods and chattels belonging to the commissioners by virtue of their office, and that, if sufficient tender of satisfaction should be made before action brought, the plaintiff should not recover for irregularity, trespass or other wrongful proceeding. See L. R. 1 Q. B. 713, note. In *Winch* v. *Conservators of the Thames,* the defendants, under authority given by local act of Parliament, constructed a towpath, of which they had the care, and for the use of which they took tolls, and were therefore held liable, to one using it and paying toll, for negligence in suffering it to be out of repair.

The result of the English authorities is, that when a duty is imposed upon a municipal corporation for the benefit of the public, without any consideration or emolument received by the corporation, it is only where the duty is a new one, and is such as is ordinarily performed by trading corporations, that an intention to give a private action for a neglect in its performance is to be presumed.

The earlier cases in the Supreme Court of the United States contain nothing inconsistent with our own decisions upon this subject. In *Fowle* v. *Alexandria,* 3 Pet. 398, 409, Chief Justice Marshall pointed out that the general rule " that money corporations, or those carrying on business for themselves, are liable for torts," was not equally applicable to " a legislative corporation, established as a part of the government of the country." In *Providence* v. *Clapp,* 17 How. 161, 167, it was assumed that actions against cities, as well as against towns, for defects in highways, could not be maintained at common law, but only so

far as given by statute; and the position was supported by referring to many cases in this and other courts in New England, some of which have been cited in the former part of this opinion. In *Richardson* v. *Boston*, 19 How. 263, 270, the action which was maintained was for so constructing a sewer as to cause an accumulation of matter at the end of the plaintiff's wharf, and to obstruct the access of vessels to it.

In *Weightman* v. *Washington*, 1 Black, 39, the action was brought for a defect in a bridge which the city of Washington, by its charter, had the sole control and management of, and was chargeable with the expense of keeping in repair, and rebuilding when necessary; and Mr. Justice Clifford, who delivered the opinion of the court, said that, " in view of the several provisions of the charter, not a doubt is entertained that the burden of repairing or rebuilding the bridge was imposed upon the defendants in consideration of the privileges and immunities conferred by the charter." 1 Black, 51. The charter having received that construction, the case was thus brought within that of *Henly* v. *Mayor of Lyme*, already cited; and the reference to that case, as establishing the general rule that a municipal corporation, under a legal obligation to repair the place in question, and liable to indictment for not repairing it, is liable to an action at the suit of any person sustaining peculiar damage, was *obiter dictum*. The learned justice inadvertently speaks of the opinion of the judges in the House of Lords in that case as having been delivered by Baron Parke. As it appears in 2 Cl. & Fin. 337, that he was present and concurred in the opinion delivered by Justice James Allan Park, the mistake is perhaps not very material; but it may be observed that the opinion delivered by Lord Wensleydale, in *Mersey Docks* v. *Gibbs*, L. R. 1 H. L. 93, 124, shows that he did not consider the decision in *Henly* v. *Mayor of Lyme* as applying to the case of a public officer or corporation discharging a public duty, and receiving no compensation or consideration for assuming or performing that duty.

In *Nebraska City* v. *Campbell*, 2 Black, 590, 592, and in *Chicago City* v. *Robbins*, 2 Black, 418, 422, and 4 Wall. 657, 670, it was said to be well settled that public municipal corporations, upon which the duty is imposed to keep in repair streets or bridges,

and the means are conferred of accomplishing that duty, are lia-
ble to action for any special damage accruing from neglect to
keep the same in proper condition. But in *Nebraska City* v.
*Campbell*, which was on writ of error from the Supreme Court
of the Territory of Nebraska, the charter of the city appears to
have contained provisions upon this subject which are not fully
given in the report, and the statement of the general doctrine
was based upon *Weightman* v. *Washington* and the cases there
cited. In *Chicago City* v. *Robbins*, the action was by the city of
Chicago to recover over against a third person, who, having had
notice of the action in which judgment had been recovered
against the city, could not contest its liability, but could only
show that there had been no fault or breach of duty on his own
part. And in *Mayor &c. of New York* v. *Sheffield*, 4 Wall. 189,
the liability of the city of New York for defects in a highway
was not denied, and the only points argued by counsel or dis-
cussed by the court were, how far the city could show that the
place in question was not a highway, and the questions of bur-
den of proof and of notice to the city.

The act of Congress of February 21, 1871, made the District
of Columbia a municipal corporation, with power to contract,
have a seal, sue and be sued, and exercise other powers of a mu-
nicipal corporation; vested the executive power in a governor
appointed by the President, and the legislative power in a legis-
lative assembly, consisting of a council and a house of delegates;
established a board of public works, consisting of the governor
and four other persons appointed by the President; and con-
tained these provisions: " The board of public works shall have
entire control of, and make all regulations which they shall
deem necessary for keeping in repair, the streets, avenues, alleys
and sewers of the city, and all other works which may be in-
trusted to their charge by the legislative assembly or Congress.
They shall disburse upon their warrant all moneys appropriated
by the United States, or the District of Columbia, or collected
from property holders, in pursuance of law, for the improvement
of streets, avenues, alleys and sewers, and roads and bridges;
and shall assess, in such manner as shall be prescribed by law,
upon the property adjoining and to be specially benefited by the
improvements authorized by law and made by them, a reason-

able proportion of the cost of the improvement, not exceeding one third of such cost, which sum shall be collected as all other taxes are collected." U. S. St. February 21, 1871, § 37.

In *Barnes* v. *District of Columbia*, 91 U. S. 540, a majority of the Supreme Court, in an opinion delivered by Mr. Justice Hunt, Chief Justice Waite and Justices Clifford, Miller and Davis concurring, and Justices Swayne, Field, Strong and Bradley dissenting, held that the District of Columbia was liable to an action by a traveller for an injury sustained by reason of a defect in a street. The majority of the court assumed, as the basis of its judgment, the fundamental propositions, that a municipal corporation, in the exercise of all its duties, including those most strictly local or internal, is but a department of the state ; that a corporation can act only by its agents or servants ; and that the care and superintendence of streets, alleys and highways, the regulation of grades, and the opening of new and closing of old streets, are peculiarly municipal duties. And it was declared that the authorities, establishing the doctrine that a city is liable to an individual for an injury arising from negligence in the construction of a work authorized by the city, were so numerous, and so well considered, that the law must be deemed to be settled in accordance with them. From these premises, and from the provisions of the act of Congress, it was concluded that the board of public works was a part of and an agency of the municipal corporation, that the proceedings of that board in the repair and improvement of the street were the proceedings of the municipal corporation, and that therefore the corporation was responsible to the plaintiff.

That decision, as far as it held the board of public works to be an agent of the corporation for whose act or neglect the corporation was responsible, is avowedly opposed to the decisions of this court in *Thayer* v. *Boston*, 19 Pick. 511, and *Walcott* v. *Swampscott*, 1 Allen, 101, to which may be added *Fisher* v. *Boston*, 104 Mass. 87, 95, and other cases there referred to ; and it would seem to be inconsistent with the judgment of the House of Lords in *Duncan* v. *Findlater*, 6 Cl. & Fin. 894, as explained in *Mersey Docks* v. *Gibbs*, L. R. 1 H. L. 116, 117, and with other decisions in England, already cited. But as the duty, for neglect of which the action now before us is sought to be main-

tained, rests, as we have already seen, upon the city itself, and not upon any public officer or board, we are not required to con· sider that point at the present time.

If the decision of the Supreme Court, so far as it asserted the liability of a municipal corporation or board to private action for a defect in a highway or public work which it was authorized and required to construct and repair, had been placed, as in the case of *Weightman* v. *Washington*, upon the ground that, in the opinion of the court, the terms of the special act creating the corporation showed that the obligation to repair was imposed by Congress upon the corporation in consideration of benefits con· ferred by the charter, we should, upon a question affecting a district of which the national legislature and judiciary have exclusive jurisdiction, readily defer to the decision.

But when that decision, approved by a bare majority of the court, and in a matter in which it is not binding upon us as authority, is based upon reasoning which does not command our assent, and which, if carried to its logical result, would impose upon every city in this Commonwealth new and indefinite liabilities, we cannot avoid the duty of examining the precedents invoked in its support, and of deciding a case, which is within our final jurisdiction, according to our convictions of what the law demands.

The previous cases in the Supreme Court have already been considered, as have been the English cases referred to, which are only *Henly* v. *Mayor of Lyme*, in which the duty of repairing sea-walls was imposed by royal charter as the condition and consideration of a grant of franchises and an acquittal of rents; *Mersey Docks* v. *Gibbs & Penhallow*, which turned upon the terms of special acts of Parliament establishing a corporation to construct and manage docks, such as were ordinarily con· structed and managed by private enterprise ; *Parnaby* v. *Lancaster Canal*, the case of an ordinary corporation making a canal and taking tolls thereon for its own benefit ; and *Scott* v. *Mayor &c. of Manchester*, in which the city carried on gas-works for profit, just as an individual or a private corporation might.

The cases in the courts of the several states are so numerous, and are so fully collected in the twenty-third chapter of Judge Dillon's valuable work on Municipal Corporations, (which has

been a great aid to us in considering this subject,) that we shall
confine our further examination to those cited upon the brief of
the plaintiff in the present case, or referred to by the Supreme
Court in *Weightman* v. *Washington* and *Barnes* v. *District of
Columbia*, as establishing the general proposition that an incor-
porated city is liable to an action for the neglect of a duty im-
posed upon it by law.

The only case so referred to, in any of the New England
States, is *Jones* v. *New Haven*, 34 Conn. 1, in which the city of
New Haven, which had accepted a charter giving the common
council power to make by-laws for the regulation and protection
of trees in the public squares and streets, was held by a majority
of the court to be liable to an action for negligence in permit-
ting a dead limb to remain upon a tree in a public square, which
fell upon and injured the plaintiff while passing under it.   We
need not consider the correctness of that decision.   It is suffi-
cient for our present purpose to observe that it was put upon
the ground that the duty of keeping the trees in proper condi-
tion was imposed by the charter in consideration of the benefit
received by the corporation, was not, strictly speaking, a public
duty, and was not a power or duty imposed upon the city by a
general law, nor applicable alike to all cities, but was a special
power or privilege conferred upon the city at its request.   34
Conn. 12.   That the decision did not proceed upon the ground of
any neglect of a public duty is clearly shown in another case
which first came before the court at the same term, and in which
it was ultimately held that no action could be maintained against
a city for neglect of a public governmental duty, such as keep-
ing the highways free from nuisances, except so far as such rem-
edy had been given by statute.   *Hewison* v. *New Haven*, 34
Conn. 136, 139, and 37 Conn. 475.

Of the New York cases referred to, those decided in 1850 or
earlier were before this court at the time of the decisions in
*Child* v. *Boston*, 4 Allen, 41, *Emery* v. *Lowell*, 104 Mass. 13, and
*Oliver* v. *Worcester*, 102 Mass. 489, and we have supposed them
to be in entire accord with those decisions.   In *Bailey* v. *Mayor
&c. of New York*, 3 Hill, 531, and 2 Denio, 433, the city of New
York was held liable for negligence in the construction of the
dam of the Croton waterworks, which, under a special act, vol-

untarily accepted by the city, had been constructed by commis-
sioners whose report had been approved by the city council,
and which became the property of the city, and from which it
derived pecuniary profits and emoluments. In *Mayor &c. of
New York* v. *Furze,* 3 Hill, 612, the city of New York was held
liable for negligence in not keeping a sewer in repair, which,
under statutes applying to that city only, the city had built
and owned, and for the expenses of constructing which the city
was authorized to lay assessments upon the estates benefited
thereby. In *Wilson* v. *Mayor &c. of New York,* 1 Denio, 595,
it was held, overruling a dictum to the contrary in *Mayor &c.
of New York* v. *Furze,* that a city was not liable for neglect to
make a sufficient sewer, that being a question upon which the
decision of the municipal authorities was conclusive. The subse-
quent cases of *Lloyd* v. *Mayor &c. of New York,* 1 Selden, 369,
and *Barton* v. *Syracuse,* 36 N. Y. 54, were, like *Mayor &c. of
New York* v. *Furze,* actions for negligence in repairing sewers.

It is said by Mr. Justice Hunt that the decision in *Child* v.
*Boston,* 4 Allen, 41, so far as it held that the city was not re-
sponsible for any deficiency in the plan of drainage adopted, " is
in hostility to *Rochester White Lead Co.* v. *Rochester,* 3 N. Y.
463, where the city was held liable because it constructed a
sewer which was not of sufficient capacity to carry off the water
draining into it; the work was well done, but the adoption and
carrying out of the plan was held to be an act of negligence."
91 U. S. 556. But the report of *Rochester White Lead Co.* v.
*Rochester* states that " the referees " (whose statement of the
facts was incorporated into the record upon which the case was
heard) " found that the culvert, in consequence of the smallness
of its size and the want of skill in its construction, was insuffi-
cient to carry off the water," &c. 3 Comst. 465. And in *Mills*
v. *Brooklyn,* 32 N. Y. 489, 497, 499, in which the only objection
to a sewer was that it was not sufficiently large to carry off the
water, and there was no want of skill in its construction, it was
held that no action would lie; and Denio, C. J., delivering the
unanimous opinion of the Court of Appeals, said that the de-
cision in *Wilson* v. *Mayor &c. of New York, ubi supra,* had
always been referred to as an accurate exposition of the law;
and in support of this statement cited, among other cases, *Roch*-

*ester White Lead Co.* v. *Rochester*, and pointed out that in that case the action was maintained upon the ground of negligence and unskilfulness in the construction of the culvert.

In *Hutson* v. *Mayor &c. of New York*, 5 Sandf. 289, in 1851, a majority of the Superior Court of the city of New York, against an exceedingly able dissenting opinion of Mr. Justice (formerly Vice Chancellor) Sandford, held the city of New York liable to an action for neglect of a duty imposed by its charter to repair a highway, and the decision was affirmed by the Court of Appeals. 5 Selden, 163. And the other cases referred to show that the same rule has been since held in that state to apply both to cities and to incorporated villages, charged by their acts of incorporation with the duty of repairing highways. *Hickok* v. *Trustees of Plattsburgh*, 15 Barb. 427, and 16 N. Y. 161, note. *Conrad* v. *Trustees of Ithaca*, 16 N. Y. 158. *Storrs* v. *Utica*, 17 N. Y. 104. *Davenport* v. *Ruckman*, 37 N. Y. 568. *Requa* v. *Rochester*, 45 N. Y. 129. The ground of those decisions is that stated by Selden, J., in an opinion which was approved by the Court of Appeals, as follows : " The surrender by the government to the municipality of a portion of its sovereign power, if accepted by the latter, may with propriety be considered as affording ample consideration for an implied undertaking on the part of the corporation to perform with fidelity the duties which the charter imposes." *Weet* v. *Brockport*, 16 N. Y. 161, 171, note. It was admitted in that opinion, and had been previously decided by the same learned judge in *Morey* v. *Newfane*, 8 Barb. 645, which does not appear to have ever been overruled, that a town was not liable to such an action.

Of the two Pennsylvania cases cited, the one was the case of a city being in possession of a public wharf, exercising exclusive supervision and control over it, and receiving tolls for its use, and therefore rightly held liable to an action for special injury to an individual in consequence of its neglect to keep the wharf in proper condition for use. *Pittsburgh* v. *Grier*, 22 Penn. St. 54. In the other, a city, which was bound by its charter to keep the streets in repair, was held liable to an action for an injury occasioned by its neglect to do so. *Erie* v. *Schwingle*, 22 Penn. St. 384. But in Pennsylvania towns and counties are held liable to similar actions. *Dean* v. *New Milford*, 5 W. & S. 545. *Hum-*

*phreys* v. *Armstrong*, 56 Penn. St. 204. *Rapho* v. *Moore*, 68 Penn. St. 404, 407. The single case referred to in Maryland shows that in that state also counties are held to be so liable. *County Commissioners* v. *Duckett*, 20 Md. 468. Where towns and counties are held liable to such actions, there is, of course, no reason why cities should be exempt; but the assertion of such a liability in counties or towns, when not declared by statute, is, as we have already seen, and as is distinctly admitted in *Barnes* v. *District of Columbia*, 91 U. S. 552, opposed to the well settled law.

In the two Virginia cases referred to, the test of the liability of a municipal corporation is stated in exact accordance with the decisions in England and in Massachusetts. In the first case, it was said that "where the authority, though for the accomplishment of objects of a public nature and for the benefit of the public, is one from the exercise of which the corporation derives a profit, or where the duty, though of a public nature and for the public benefit, may fairly be presumed to have been enjoined upon the corporation in consideration of privileges granted to and accepted by it, the exemption does not apply; and the reason is that, in such cases, the corporation is not acting merely as an agent of the public and with a view solely to the public benefit, but that in the former it is pursuing its own interest and profit, and in the latter is executing a contract for which it has received a consideration." *Sawyer* v. *Corse*, 17 Gratt. 230, 241. In the second case, the duties for breach of which a municipal corporation was said to be liable to private action were defined as "those ministerial, specified duties, which are assumed in consideration of the privileges conferred by their charter." *Richmond* v. *Long*, 17 Gratt. 375, 379. And in both cases the judgment of the Court of Appeals was in favor of the original defendant.

The decisions in North Carolina and Alabama appear to have proceeded upon the ground that the corporation had received a peculiar benefit in the special privileges and immunities granted to it. In *Meares* v. *Commissioners of Wilmington*, 9 Ired. 73, the action was not for an injury resulting from the plaintiff's use of a defective way or public building, but for causing the plaintiff's house to fall by the unskilful and careless cutting down of the grade of a street, for which no compensation was provided

by the statutes under which the work was done; and the opin
ion was based upon the fallacies that there was no difference, in
liability to action, between a municipal and a private corpora-
tion, and that the fact that the corporation was at the expense
of making the work was the surest test by which to find out for
whose benefit the work was done. In *Smoot* v. *Mayor &c. of
Wetumpka*, 24 Ala. 112, the action was for neglect of a duty to
repair highways, imposed by special charter, in the same sec-
tion which released the inhabitants "from working on roads and
highways out of the said city, and from patrol duty, except
under authority of said city."

Three Ohio cases are referred to: *Rhodes* v. *Cleveland*, 10
Ohio, 159; *McCombs* v. *Akron*, 15 Ohio, 474; *Western College
v. Cleveland*, 12 Ohio St. 375. In *Rhodes* v. *Cleveland*, the re-
port shows nothing of the nature of the suit, except that it was
"an action on the case for cutting ditches and watercourses in
such a manner as to cause the water to overflow and wash away
the plaintiff's land;" and the point decided was, that the plain-
tiff need not show that the corporation acted illegally or mali-
ciously. In *McCombs* v. *Akron*, an action on the case was sus-
tained for an injury to the plaintiff's property by the cutting
down and grading of a street by a city, strictly within the scope
of its legal authority, and unattended by any circumstances of
negligence or malice — a conclusion inconsistent with the deci-
sions of the Supreme Court of the United States, of this court,
and of the courts of about every other state in which the ques-
tion has arisen. *Smith* v. *Washington*, 20 How. 135. *Callender
v. Marsh*, 1 Pick. 418. Dillon on Mun. Corp. § 783, note. In
*Western College* v. *Cleveland*, the point decided was that a city,
whose charter made it its "duty to regulate the police of the
city, preserve the peace, prevent riots, disturbances and disor-
derly assemblages," was not liable to an action for the destruc-
tion of property in a riot, or for the neglect of the police offi-
cers in not preserving the peace and preventing such destruction.

In Illinois, as shown by the cases referred to, incorporated
cities are held liable to actions for neglect of duties imposed by
their charters to repair highways and bridges; *Browning* v.
*Springfield*, 17 Ill. 143; *Springfield* v. *Le Claire*, 49 Ill. 476
although in earlier and later cases in that state, cited in the

former part of this opinion, counties and towns have been held not to be liable under general laws for like neglect. In *Pekin* v. *Newell*, 26 Ill. 320, cited for the present plaintiff, the city assumed to act under a special statute in constructing, and taking tolls upon, the way, for a defect in which it was held liable; and the only defence made was that the city had constructed the way on a pile bridge, when the authority conferred by the statute was to make an embankment and plank road at the place. In the remaining case referred to in Illinois, the court sustained an action on the case against a city for negligence of the city council in failing to collect an assessment, laid by way of betterment upon estates benefited by the laying out of a street, to compensate the plaintiff and others for the damages sustained by them from such laying out. *Clayburgh* v. *Chicago*, 25 Ill. 535. Of that decision, it is enough to say that it is wholly inconsistent with the system of judicial remedies in this Commonwealth.

The cases in Wisconsin, referred to by Mr. Justice Hunt, arose under statutes similar to those of this and other New England States, expressly making all towns and cities liable to actions for damages for defects in highways. *Cook* v. *Milwaukee*, 24 Wis. 270. *Ward* v. *Jefferson*, 24 Wis. 342. In *Alexander* v. *Milwaukee*, 16 Wis. 247, cited on the plaintiff's brief, the action was for consequential damages from the proper construction of a public work, there had been no neglect of duty, and there was held to be no liability on the part of the city.

The result of this review of the American cases may be summed up as follows: There is no case, in which the neglect of a duty, imposed by general law upon all cities and towns alike, has been held to sustain an action by a person injured thereby against a city, when it would not against a town. The only decisions of the state courts, in which the mere grant by the Legislature of a city charter, authorizing and requiring the city to perform certain duties, has been held sufficient to render the city liable to a private action for neglect in their performance, when a town would not be so liable, are in New York since 1850, and in Illinois. The cases in the Supreme Court of the United States, in which private actions have been sustained against a city for neglect of a duty imposed upon it by law, are of two classes: 1st. Those which arose under the peculiar terms

of special charters, in the District of Columbia, as in *Weightman* v. *Washington* and *Barnes* v. *District of Columbia*, or in a territory of the United States, as in *Nebraska City* v. *Campbell*. 2d. Those which, as in *Mayor &c. of New York* v. *Sheffield*, and *Chicago City* v. *Robbins*, arose in New York or in Illinois, and in which the general liability of the city was not denied or even discussed, and apparently could not have been, consistently with the rule by which the Supreme Court of the United States, upon questions of the construction and effect of the Constitution and statutes of a state, follows the latest decisions of the highest court of that state, even if like words have been differently construed in other states. *Elmendorf* v. *Taylor*, 10 Wheat. 152, 159. *Christy* v. *Pridgeon*, 4 Wall. 196. *Richmond* v. *Smith*, 15 Wall. 429. *Tioga Railroad* v. *Blossburg & Corning Railroad*, 20 Wall. 137. *State Railroad Tax Cases*, 92 U. S. 575, 615. In the absence of such binding decisions, we find it difficult to reconcile the view, that the mere acceptance of a municipal charter is to be considered as conferring such a benefit upon the corporation as will render it liable to private action for neglect of the duties thereby imposed upon it, with the doctrine that the purpose of the creation of municipal corporations by the state is to exercise a part of its powers of government — a doctrine universally recognized, and which has nowhere been more strongly asserted than by the Supreme Court of the United States, in the opinions delivered by Mr. Justice Hunt, in *United States* v. *Railroad Co.* 17 Wall. 322, 329, and by Mr. Justice Clifford, in *Laramie* v. *Albany*, 92 U. S. 307, 308.

But, however it may be where the duty in question is imposed by the charter itself, the examination of the authorities confirms us in the conclusion that a duty, which is imposed upon an incorporated city, not by the terms of its charter, nor for the profit of the corporation, pecuniarily or otherwise, but upon the city as the representative and agent of the public, and for the public benefit, and by a general law applicable to all cities and towns in the Commonwealth, and a breach of which in the case of a town would give no right of private action, is a duty owing to the public alone, and a breach thereof by a city, as by a town, is to be redressed by prosecution in behalf of the public, and will not support an action by an individual, even if he sus-

tains special damage thereby; and, according to the terms of the report, there must be  *Judgment for the defendant.*
*C. R. Train,* (*S. F. Keyes* with him,) for the plaintiff.
*H. W. Putnam,* (*J. P. Healy* with him,) for the defendant.